CHARLES McCAULEY v. ANHEUSER-BUSCH BREWING ASSOCIATION, Appellant.

Divison One, October 5, 1923.

1. **NEGLIGENCE:** Fellow-Servant: General Helper. All persons are fellow-servants who are engaged in the prosecution of the same common work and have no dependence upon or relation to each other except as co-laborers without rank under the direction and management of the master himself, or of some servant placed by the master over them; and one engaged with others as a fellow-servant cannot bind the master by a mere arrogation of authority to give orders concerning acts of such others. But evidence that an employee had charge of all the business of a brewing association in selling and delivering beer in the central district of a city, and had been for thirty-five years, and directed the time, place and manner of making deliveries; that respondent worked as his helper in making deliveries, and without his direction "didn't know what to do;" that in making a delivery to a hotel, the employee chose the elevator as the method of lowering the beer into the basement, took charge of it, and in using it managed to get it into a dangerous condition, and ordered respondent to shake it; that respondent complied with the order, but the first effort failing to loosen it the employee ordered him to shake it hard, and when respondent did so it suddenly descended and injured him, justified a finding that the employee and respondent were not fellow-servants, but that the defendant is liable for said employee's negligent acts.

McCauley v. Brewing Association.

2. ———: **Elevator: Sudden Drop: Cause.** The elevator moved in a sort of shaft which extended from the sidewalk level to the basement floor of a hotel, about six feet below; it was kept in position by uprights, called guides; its platform was about five feet square, and carried on each side a curved iron support, which helped to sustain the doors which covered the opening in the sidewalk at the top of the shaft when the elevator was down, and raised these doors when it moved up; the platform rested upon and was fastened to an iron post or rod called a plunger, which fitted into a pipe at the bottom of the shaft; the elevator was operated by water pressure, and the water was admitted and escaped through valves, which were controlled by a wheel; when the wheel was turned to the left a valve was opened and the water was admitted below the plunger, and the pressure slowly thrust upward the plunger and the elevator platform fixed upon its upper end; turned to the right, the valve of entrance for the water was closed, and another valve was opened which permitted the water to waste at such rate that the elevator slowly descended; and when the wheel was turned to a neutral point, both valves were closed, the water was neither admitted nor permitted to escape, and the elevator remained stationary, sustained by the water beneath the plunger. The elevator and appliances were in good condition; defendant's employee knew how it was operated; he entered the elevator, turned the wheel so as to admit water below the plunger, and the platform was raised to the level of the sidewalk, the doors in the sidewalk being raised as it came up; thirteen cases of beer were loaded upon the platform, the employee lowered the elevator, and the beer was removed; again the employee raised the elevator in the usual way, except that he kept the entrance valves open and admitted water until the platform was raised to a position a foot above the sidewalk level; he then began to work with the wheel in an endeavor to lower the elevator to the plane of the sidewalk, but was unable to do so, and ordered respondent, who was on the sidewalk at the open doors, to shake it, and respondent did so without result, and the employee told him to shake it hard; respondent then took hold of one of the arches with both hands, and with one foot upon the platform, shook the elevator as ordered; the trouble was that it had gone above the tops of the guides, and was hanging there, and when respondent shook it hard, it slipped back between the guides and dropped suddenly to a point four feet below the sidewalk level; and the fair inference from the evidence is that the employee had attempted to lower the elevator by turning the wheel and permitting the water to waste, and that the elevator fell because the water had escaped from beneath the plunger. *Held*, that the evidence sufficiently shows why the

elevator dropped. It likewise shows that the employee was neg-
ligent in letting the water out.and ordering respondent to shake
the elevator back into place when he knew that it would fall
until the bottom of the plunger reached the top of the column
of water beneath it.

3. ———: ———: Unforeseen Accident: No Like Experience. That
a like situation had not previously existed cannot excuse defend-
ant's employee from the duty to know that the heavy platform of
a hotel elevator will not remain poised in the air after all·sup-
ports of every kind have been removed from beneath it. Where
the employee had ordered his helper to shake an elevator, which
he had permitted to reach a position above its upright guides and
from beneath which he had caused to escape the water which or-
dinarily sustained it, and which, when it righted itself as a result
of such shaking, as he desired and expected, dropped four or five
feet, catching the helper in its sudden fall, the fact that such an
accident had not previously occurred is no defense, for such a drop
under the circumstances was not unforeseen to any man who had
ordinary knowledge of the law of gravitation. Under such cir-
cumstances the order to the helper was negligently given.

4. ———: Instruction: Order Negligently Given: Compelled Conclusion
from Facts to Be Found. Where the instruction required the
jury to find facts which if found conclusively establish the
negligence of defendant's employee in the giving of an order which
brought plaintiff into the dangerous situation, it is sufficient
although it does not expressly require them to find that the order
was negligently given. The rule is that it is not important that
the jury was not asked to determine as a fact a thing which facts
they were required to find before rendering their verdict for
plaintiff showed to be true as a matter of law.

5. ———: ———: Presenting Issue of Fellow-Servant: In Equiva-
lent Words. An instruction telling the jury that if they find from
the evidence that plaintiff and the employee whom he was helping
"were in defendant's employ and in the performance of their duties
for defendant" in using and handling the elevator by which plain-
tiff was injured, and that said employee "was in charge of said
work and of the plaintiff and that plaintiff received his orders
from and was required to obey" said employee "in the doing of
said work," did not ignore the defense that plaintiff and said em-
ployee were fellow-servants, but required the jury to find that
they were not fellow-servants.

6. ———: ———: Contributory Negligence. It is not error to refuse
an instruction dealing with contributory negligence where others
given for defendant fairly cover the subject. Besides, in this case

McCauley v. Brewing Association.

the refused instruction was faulty, in that it is open to the construction that it authorized a verdict against plaintiff if he was guilty of any negligence whatsoever, however slight.

7. ———: **Defendant's Instruction on Fellow-Servant: Modification.** The instruction told the jury that if they found from the evidence that defendant's employee "and plaintiff were at the time fellow-employees of defendant (that is, neither had authority or control over the acts of the other) and were engaged in a common task and undertaking" their verdict must be for defendant. The instruction was asked by defendant, and the court added the words in parentheses, and then gave it as modified. *Held*, that the instruction did not authorize a finding for plaintiff under any circumstances; and defendant cannot complain of the instruction in the form it requested it, and the modification in no wise so changed it as to make it less advantageous to defendant than did the instruction as asked, but its sole function was to explain the words "fellow-employees," in language accurate enough.

8. ———: **Instruction: Extraneous Matters.** It is not error to refuse an instruction relating to issues tendered neither by the pleadings nor evidence.

9. ———: **Evidence: Concerning Unpleaded Defects.** Where the elevator was upheld by water pressure, and the only way for the water to get out of the plunger was either by leakage or by the use of the wheel, and defendant's employee denied that he let the water out by the use of the wheel, and he had previous notice that there was sometimes leakage and it was easy to discover loose leakage, the admission of evidence that the packing around the plunger became loose at times and a little leaking would result was not error, although there was no allegation in the petition that plaintiff's injuries resulted from them.

10. ———: ———: **Unpleaded Injuries: Curvature of Spine.** Appellant cannot complain that the court permitted testimony showing that curvature of the spine had resulted from plaintiff's injuries, in that such resulting injury was not pleaded, where no objection was made at the time the direct questions which elicited the testimony were asked and the responsive answers were given. Besides, a petition which alleges that plaintiff suffered "bruising, wrenching, straining and injuring of the muscles, ligaments, tissues and nerves of the back, hips and legs" and "wrenching, twisting and shocking of plaintiff's spine, spinal column and nervous ligaments and tissues thereof" contains allegations sufficiently broad to cover evidence of a curvature of the spine.

300 Mo.—41

11. **TRIAL: Motion for Costs.** An objection that the trial court erroneously permitted plaintiff to proceed to trial because an application to sue as a poor person and a subsequent motion for costs had not been disposed of, is answered on appeal by a record showing that the matter was presented to the trial court and he had explicitly ruled that the application came too late under rules which do not appear in the record.

Appeal from Jackson Circuit Court.—*Hon. O. C. Lucas,* Judge.

AFFIRMED.

*Oliver T. Remmers, Hagerman & Jost, Frank Hagerman* and *Henry L. Jost* for appellant.

(1) Defendant's demurrer at the close of plaintiff's evidence and its request for a peremptory instruction at the close of all the evidence should have been granted. (a) Schultz, in the operation of the elevator, was a fellow-servant of plaintiff, and defendant is not liable for injuries resulting to plaintiff from a negligent operation of said elevator by Schultz, while the latter was engaged with plaintiff in using said instrumentality for the purpose of delivering beer, in the performance of a common service. 18 R. C. L. 712; Fogarty v. Transfer Co., 180 Mo. 490; McIntyre v. Tebbetts, 257 Mo. 128; McCarty v. Hotel Co., 144 Mo. 402; Donnelly v. Mining Co., 103 Mo. App. 349; Dickinson v. Jenkins, 144 Mo. App. 132; English v. Shoe Co., 145 Mo. App. 439; Rodgers v. Schiele, 148 Mo. App. 53; Haas v. American Car Co., 176 Mo. App. 314; McCaffrey v. Glue Co., 143 Mo. App. 24, 32; Hawk v. Lumber Co., 166 Mo. 121. (b) Conceding for the sake of argument, that the request of Schultz to plaintiff to shake the elevator was an order of superintendence and not a verbal act or detail of the common work, there is no foundation for a verdict in this case, since there was not a scintilla of evidence tending to show that such direction was negligently given. Bennett v. Benjamin Equipment Co., 214 S. W. 245;

McCarty v. Rood Hotel Co., 144 Mo. 402; Weber v. Milling Co., 242 S. W. 989; Halloran v. Pullman Co., 148 Mo. App. 243; Holt v. Electric Railroad, 84 Mo. App. 443; Zasemowich v. American Mfg. Co., 213 S. W. 902; Helgeson v. Higley, 126 N. W. 770; Kallher v. Paving Co., 155 Mo. App. 372; Stringham v. Stewart, 1 L. R. A. 486. (c) The record discloses no evidence tending to show what caused the elevator to suddenly drop with plaintiff, and defendant cannot be held liable upon a mere supposition and guess that Schultz may have been working the control wheel in the basement, thereby allowing water to waste from and under the plunger while the elevator was stuck. Bennett v. Benjamin Mfg. Co., 214 S. W. 245; McGee v. Railroad, 214 Mo. 543; Weber v. Mill. Co., 242 S. W. 989. (d) Since plaintiff had long worked with and was familiar with the elevator and knew as much about it as Schultz, and since neither had reason to expect it would drop in the manner it did, plaintiff assumed the risk of shaking it back on its guides, and as a matter of law was not entitled to recover. Pulley v. Standard Oil Co., 136 Mo. App. 176; Harbacek v. Fulton Iron Co., 229 S. W. 808; Barrett v. Virginia Railroad, 244 Fed. 400; Harrington v. Railway, 104 Mo. App. 671; Juchatz v. Michigan Alkali Co., 79 N. W. 907; Reed v. Moore, 153 Fed. 358, 25 L. R. A. (N. S.) 331, 334; 4 Thompson on Negligence, sec. 4343, p. 668; 18 R. C. L. sec. 173, p. 685; Kane v. Railroad, 112 Mo. App. 650. (2) Modified Instruction 1 given by the court for plaintiff was erroneous: (a) Because it allowed a finding that the elevator was likely to drop while being shaken into position and that such fact was known to or could have been known to Schultz, when there was no evidence whatever to support such a finding. (b) Because it allowed a finding by the jury that Schultz ordered plaintiff to shake the elevator, knowing at the time it was likely to drop, when in fact there was no evidence tending to prove such fact. If Schultz had any such alleged knowledge it was necessarily acquired while op-

erating said elevator previously as a fellow-servant of the plaintiff, and cannot, therefore, be imputed to the defendant. McCaffrey v. Tamm Bros. Glue Co., 143 Mo. App. 32; Southern Ry. Co. v. Childrey, 74 S. E. 225; Eddery v. Transit Co., 135 N. Y. Supp. 170. (c) Because this instruction covered the whole case and permitted a verdict for plaintiff, on a finding that Schultz gave plaintiff an order to shake the elevator, without requiring also a finding by the jury that such order was negligently given. Simick v. Iron Co., 232 S. W. 243; Hall v. Coal & Coke Co., 260 Mo. 367; McCarty v. Rood Hotel Co., 144 Mo. 402. (3) Modified Instruction 1 for plaintiff was erroneously given for the further reason that it assumed to and did cover the whole case and alone authorized a verdict for the plaintiff, and ignored the pleaded defense and issue of fellow-servant and relieved plaintiff from the obligation of establishing Schultz to have been a vice-principal at the time it is claimed that he gave the alleged order. McGowan v. Railroad, 61 Mo. 528; Blessing v. Ry. Co., 77 Mo. 410; Ryan v. Board of Publications, 199 S. W. 1031; Shaw v. Const. Co., 102 Mo. App. 671; Simick v. Stupp Bros., 232 S. W. 243; Sherwood v. Railway, 187 S. W. 263; State ex rel. v. Ellison, 272 Mo. 571. (4) The court's modification of defendant's requested Instruction 12 and the giving of said instruction as modified was error, in that the court thereby made the rank of Schultz, instead of his act complained of, the determining factor as to whether the fellow-servant relationship existed. 4 Labatt, Master and Servant, p. 4167, sec. 1441; McIntyre v. Tebbets, 257 Mo. 117. (5) The court, over defendant's objections, erroneously admitted evidence tending to prove a defective condition of the elevator, since the petition did not charge defendant with negligently furnishing plaintiff with an unsafe appliance or an unsafe place to work. Williamson v. Stockyards Co., 217 S. W. 615; Current v. Mo. Pac. Ry., 86 Mo. 62; McCarty v. Rood Hotel Co., 144 Mo. 397. (6) The refusal of defendant's

Instruction 13 was error, since defendant was entitled to have the jury instructed that it was not to be held responsible in this case for any defect in the elevator or on account of the absence of any safety device thereon, since such matters were not among the specifications of negligence charged in the petition. State ex rel. v. Ellison, 270 Mo. 645, 654; Mueller v. LaPrelle Shoe Co., 109 Mo. App. 506, 515; Erdmon v. Lumber Co., 182 Fed. 45; O'Brien v. Western Steel Co., 100 Mo. 182; Bryan v. Lamp Co., 176 Mo. App. 716, 728. (7) The court erred in admitting evidence that plaintiff had a curvature of the spine and a derangement of pelvic bones, and erred in refusing defendant's motion on that behalf to strike said testimony out and withdraw it from the jury for that these were not among the specified injuries in the petition. Hall v. Coal & Coke Co., 260 Mo. 371; Hibler v. K. C. Rys. Co., 237 S. W. 1016; Fink v. Railway, 219 S. W. 680; Shafer v. Dunham, 192 Mo. App. 502. (8) The court erred in forcing defendant to trial in violation of its rules. 7 R. C. L. 1027, sec. 54; 18 Ency. Pl. & Pr. 1265; State ex rel. v. Robertson, 181 S. W. 987; Rigdon v. Ferguson, 172 Mo. 49.

*Gamble, Trusty & Pugh* and *S. L. Trusty* for respondent.

(1) The demurrer was properly overruled because: (a) By its instruction numbered 8 defendant admits the authority of Schultz to give the order to plaintiff and its liability if it was given. (b) Schultz was not a fellow-servant, because, along the route assigned to him, he conducted all the business, solicited orders, controlled the deliveries, collected the money, selected the appliances to be used, furnished the place, regulated its condition and gave the orders as if he alone were the master. McIntyre v. Tebbetts, 257 Mo. 117; State ex rel. Lusk v. Ellison, 27 Mo. 463; McCall v. Nugent Co., 236 S. W. 324; Strother v. Milling Co., 261 Mo. 1; Fogarty v. Trans-

fer Co., 180 Mo. 490; Rigsby v. Oil Well Supply Co., 115 Mo. App. 297; Burkard v. Rope Co., 217 Mo. 466; Moore v. Railroad, 85 Mo. 588; Small v. Ice & Fuel Co., 179 Mo. App. 456; Comisky v. Heating Co., 219 S. W. 999; Mitchel v. Polar Wave Ice Co., 227 S. W. 266; Montgomery v. Payne, 228 S. W. 842; Hancox v. Craddock, 229 S. W. 271; Bradshaw v. Standard Oil Co., 204 S. W. 831; Morin v. Rainey, 207 S. W. 859; Hines v. Packing Co., 201 S. W. 1127; Jorkiewiez v. Brake Co., 186 Mo. App. 534; Medley v. Parker Co., 207 S. W. 887. (c) It was the duty of the defendant, through its sole representative and manager of its business along the route, to exercise due care to furnish reasonably safe appliances, a reasonably safe way and place, and to refrain from negligently ordering him into danger, and from negligently rendering his place or way unsafe when he was obeying an order. Clark v. Union I. & F. Co., 234 Mo. 436; Waldron v. Director General, 266 Fed. 196. (d) The evidence that Schultz ran the lift platform off the guides; tried to get it back by manipulating the machinery; knew that it was out of "whack" and that water "ran like everything," had absolute control of the water supply and pressure; that he knew McCauley's position when shaking the elevator; that it could not drop unless the water leaked out or was permitted to escape by Schultz turning the wheel, and that he had controlled it on former occasions so it did not drop when being pushed back, together with the fact that when it dropped he immediately turned the wheel and put the pressure on, and that he knew the water pressure was all that kept the elevator up, is sufficient evidence that he knew the condition and that the order was negligently given. (e) These facts, together with the further facts that McCauley heard Schultz rattling the machinery while the platform was off the guides; that Schultz stated that it would not come down; that he stood at the wheel because he knew it was necessary to keep the water supply regulated; that Schultz was at

the wheel when it dropped and instantly turned it to put the pressure on, is sufficient proof that the water had escaped and that Schultz had failed to keep the pressure under the elevator, and had turned the valve open. (f) As plaintiff was imperiled by the negligence of Schultz, the latter's acts in churning the elevator up and down were precipitated by the original negligence of Schultz. Scheurer v. Rubber Co., 227 Mo. 366; Raasch v. Elite Laundry, 7 L. R. A. (N. S.) 940. (g) If the machine was defective and McCauley knew of it he would not have assumed the risk under the law of this State, but he did not know of its defective condition or of its mechanism, construction, power or means of operation, and did not know that Schultz had failed to keep the water supply under the elevator. Williams v. Union Elec. Co., 219 S. W. 902. (2) Defendant's Instruction One was properly refused because the fellow-servant rule does not apply, and it omits the order and the authority of Schultz and the capacity in which he was acting, and his duty to protect plaintiff while he was obeying the order. Brown v. Forrester, 243 S. W. 330; Koenig v. Rys. Co., 243 S. W. 118. (3) Plaintiff's modified instruction one was proper because: (a) The facts show that Schultz knew or should have known that the elevator would likely drop while being shaken into position. It conforms to the petition and proof. Strother v. Milling Co., 261 Mo. 1. (b) The facts show that Schultz either released the water by means of the control wheel or failed to keep the pressure supplied when he knew it was necessary and thereby caused or permitted the water to escape and the elevator to drop. (4) Plaintiff's modified instruction one did not ignore the fellow-servant issue and did not relieve plaintiff of the burden of showing that Schultz was acting by virtue of his authority. (a) It required a finding of facts which made Schultz a representative of the master, as to the place, and in failing to exercise due care towards him while he was obeying the order. (b) Under the last clause of the instruction the

jury could not find under it without first finding against the defendant under the other instructions; and it required a finding of facts which lifted Schultz out of the fellow-servant class. Borowski v. Loose-Wiles, 229 S. W. 424; Bennett v. O'Malley, 238 S. W. 144; Colburn v. Krenning, 220 S. W. 940; Daniels v. Pryor, 227 S. W. 106; Meily v. Railroad, 215 Mo. 587. (5) Appellant cannot complain of modification and giving of its Instruction 12 because: (a) The instruction as offered was fatally defective. It omitted the ordinary duty element, the order of Schultz, his authority, his knowledge of the danger, the duty of defendant to furnish a reasonably safe way, and the facts which would determine the capacity in which Schultz acted. Brown v. Forrester, 243 S. W. 330; Koenig v. Rys. Co., 243 S. W. 118. (b) It did not define the meaning of the term "fellow-employees," and the modification does do so. (c) It furnished the jury no criterion for determing when Schultz, in the manipulation of the elevator, was acting by virtue of his authority or performing an ordinary duty of fellow-service. (d) If the instruction is bad as modified it was bad before it was modified, and the error was induced by defendant. (e) But the modification states the law; that is, if in the "acutal operation and movement of the elevator by Schultz," he "had authority or control over the acts of McCauley," then such operation and control would be by virtue of his authority.

JAMES T. BLAIR, J.—This is an action for personal injuries suffered by respondent while employed by appellant. A previous action was begun and, after a time, dismissed. Thereafter this action was instituted.

Appellant was engaged in the manufacture and sale of beer. In organizing its sales and distribution force in Kansas City it divided that city into districts. In the central or down-town district Henry Schultz was placed in full charge. He solicited orders, made sales, directed deliveries and made the collections. He was responsible for the money collected and was under bond.

He received a small salary. Most of his compensation was derived from commissions. He had been so engaged for thirty-five years. The evidence tends to show that respondent worked as Schultz's helper in the business of delivering beer; that he had so worked for eighteen months; during that time Schultz had given all the orders and had directed respondent, and respondent, so Schultz testifies, worked under his instructions. Schultz says he employed respondent, but that he did not have power to discharge him; that, if occasion arose, he would complain to the union and they would consider it. He says respondent was subject to his orders; that respondent did not know what to do—"he was a helper, that was all;" that he, Schultz, "had charge of the wagon" and was "responsible." Schultz solicited and took all orders, kept the order book and controlled the time and manner of loading and delivering beer. On the day respondent was hurt he and Schultz were delivering beer to the Mercer Hotel, a customer in Schultz's district. This hotel was equipped with an elevator which Schultz had used on previous occasions to lower beer into the basement. The authorized operator was the hotel porter, but Schultz testifies it was the habit when delivering beer that "we generally always go down and work the thing ourselves—that is, I did." Schultz desired to see prospective customers on the route, and told respondent to drive to the hotel and then wait for him. This, respondent did. When Schultz arrived the porter was not at hand, and Schultz said he would run the elevator. He went into the basement for that purpose. The elevator moved in a sort of shaft which extended from the sidewalk level down to or near the basement floor. Its range of movement was probably about six feet. It was kept in position by uprights, called guides, which extended upward on each side from the basement floor. The platform was about five feet square and carried on each side a curved iron support, which helped sustain the doors which covered the opening in the sidewalk at the top of the shaft when the elevator was down, and

which raised these doors as the elevator moved upward. The platform rested upon and was fastened to an iron post or rod called a plunger which fitted into a pipe at the bottom of the shaft. The elevator was operated by city water pressure. The water was admitted and escaped through valves. These were controlled by a wheel. When the wheel was turned to the left a valve was opened and the water was admitted below the plunger and the pressure (180 lbs.) slowly thrust upward the plunger and the elevator platform fixed upon its upper end. Turned to the right the valve of entrance for the water was closed and another valve was opened which permitted the water to waste at such rate that the elevator descended slowly. When the wheel was turned to a neutral point both valves were closed, the water was neither admitted nor permitted to escape, and the elevator remained stationary, sustained by the water beneath the plunger.

There was evidence that the elevator and appliances were in good condition and that the water could not escape to an appreciable extent from beneath the plunger unless the wheel was so turned that the valve which let it out was opened. There was other evidence that the elevator was in such condition that a little water escaped without the valve being opened. The evidence tends to show that if this testimony is true anyone operating the elevator would see the escaping water, and in any event the rate of escape would be very slow. On the occasion in question Schultz went into the basement, turned the wheel so as to admit the water below the plunger, and the elevator platform was raised to the sidewalk level. As it came up the doors in the sidewalk were raised. After the platform reached the sidewalk level respondent placed thirteen cases of beer upon it, and Schultz lowered it, together with respondent, into the basement. The two then removed the beer from the elevator. Respondent walked up the stairway to the street level and Schultz raised the elevator in the usual way, except that he kept the entrance valve open and

admitted water until the platform was raised to a posi-
tion about a foot above the sidewalk level. The evidence
tends to show Schultz then began to work with the wheel
in an endeavor to lower the elevator to the plane of the
sidewalk, but was unable to do so, though he had pre-
viously accomplished in that way a like purpose when the
elevator was two or three inches too high. In the mean-
time respondent had placed three cases of beer upon the
platform and was about to put on a fourth when Schultz
told him not to put on any more; that the elevator was
above the walk and would not come down. Schultz was
trying to get it down; respondent could hear him working
with it. The elevator did not descend and Schultz told
respondent to shake it. Respondent did so without re-
sult, and Schultz told him to shake it hard. Respondent
then took hold of one of the arches with both hands and
with one foot upon the edge of the platform shook the
elevator as ordered. The trouble was that the elevator
had gone high enough to get above the tops of the guides
and was hanging there. When respondent shook it hard
as Schultz directed, it slipped back between the guides
and dropped suddenly to a point about four feet below
the sidewalk level. It is a necessary inference that be-
tween the time that the elevator stopped on its upward
course and the time when it dropped when it was shaken
back to its position between the guides, the water which
supported the plunger, and had raised the elevator to the
point it had reached, had escaped from beneath the
plunger to such an extent that the plunger found no sup-
porting column of water upon which to rest until it
dropped suddenly to the point four feet below the side-
walk level. As the elevator went down suddenly re-
spondent was drawn head first into the shaft, and the
sidewalk doors fell upon and held his legs. Schultz ran
the elevator up and then down and then repeated this
operation, when the hotel porter, aroused by the noise,
emerged, pushed Schultz aside, took the wheel and
quickly extricated respondent. Respondent had never
operated the elevator and knew nothing of its manner

of operation or what agency was employed in its operation. The details of respondent's injuries need not be set out, since it is not claimed the damages allowed are excessive.

I.  It is contended that Schultz and respondent were fellow-servants and there can be no recovery for that reason.  It is conceded that Schultz "had authority over" respondent in some respects, but it is insisted

**Fellow-Servants.**  that their relation was that of fellow-servants with respect to the act in the performance of which respondent was injured.  "All are fellow-servants who are engaged in the prosecution of the same common work leaving [having?] no dependence upon or relation to each other, except as co-laborers without rank, under the direction and management of the master himself, or of some servant placed by the master over them." [Moore v. Ry. Co., 85 Mo. l. c. 594.] Schultz had charge of all the business in the central district and was empowered to direct the activities of his helper.  For thirty-five years he had done so.  He says the helper "didn't know what to do."  He directed the time, place and manner of deliveries; he chose the elevator as a method of delivery.  He operated it himself as he had theretofore done.  Respondent knew nothing about the construction or operation of the elevator.  After Schultz had taken charge of it and directed its use in lowering the beer into the basement, he managed to get it into a dangerous condition.  After he had done this he twice ordered (Stephens v. Railroad, 86 Mo. 221) respondent to shake the elevator.  Compliance with this order resulted in the injury respondent received.  Schultz testifies to his authority to give the orders as to all activities.  The evidence justified a finding against the contention appellant makes.  The point is made clear by the discussion in McIntyre v. Tebbetts, 257 Mo. 117, and the decisions therein cited.  Fogarty v. Transfer Co., 180 Mo. 490, is one of these last, and both it and the Tebbetts Case approve a rule which includes territory

well beyond that occupied by the facts of this case. [Burk-
ard v. Rope Co., 217 Mo. l. c. 482; McCall v. Dry Goods
Co., 236 S. W. l. c. 326, 327; Loretta v. Columbia Can Co.,
246 S. W. l. c. 998, 999 (*Certiorari* denied this term), and
cases cited; Stapleton v. Hummel Mfg. Co., 202 S. W.
370.] It is true, as in cases relied upon by appellant,
that one engaged with others as a fellow-servant can-
not bind the master by a mere arrogation of authority
to give orders concerning acts of fellow-service; but
that is not this case.

II. It is argued that (1) there is no evidence that
the order given by Schultz was negligently given; and
(2) there is no evidence tending to show why the ele-
vator dropped. Consider these in inverse order.

(a) The evidence tends to show the elevator was
in good working order and could not drop unless the
water had been allowed to escape from beneath the plung-
er by the opening of the waste valve.
Cause of Drop. Schultz knew how the elevator was operated.
He had attempted to lower it by turning the wheel and
letting the water waste. This is at least fairly, if not
conclusively, inferable from the fact that by working
with the elevator he had discovered that it would not
descend in response to its usual operation. It was not
until after he made this discovery that he ordered re-
spondent to shake the elevator. The evidence requires
a finding that the elevator fell because the water had
escaped from beneath the plunger and certainly justifies
a finding that Schultz had opened the valve and allowed
it to escape in his effort to lower the elevator.

(b) If Schultz had let the water out he knew that
when the elevator was shaken back on in response to
his order it would fall until the bottom of the plunger
reached the top of the column of water beneath it. This
is what was to be expected, according to the testimony
of the engineer and obviously accords with plainest rea-

**Negligent Order.** son, and is what did happen. Since Schultz let the water out he knew it was out and a fall of the platform was inevitable when it was shaken back on the guides. To say he did not know this is to say he did not know that the law of gravitation worked in the Mercer Hotel basement. It is argued that appellant cannot be held for "something which had never happened before and which Schultz had no reason to expect would happen then." Holt v. Railway, 84 Mo. App. l. c. 448, is cited. The rule there announced, and quoted by counsel, is: "That which never happened before, and which in its character is such as not to naturally occur to prudent men to guard against its happening at all, cannot, when in the course of years it does happen, furnish good ground for a charge of negligence in not foreseeing its possible happening and guarding against that remote contingency." That rule is inapplicable to this case. Here there was presented the simple situation that Schultz ordered respondent to shake the elevator off the supports, which at the moment were holding it up, after he had so dealt with the appliance that the result of the act he ordered must necessarily be that the elevator would fall. That the situation has not previously existed cannot excuse Schultz from a duty to know that a heavy platform, such as that in this case, will not remain poised in the air after all supports of every kind have been removed from beneath it.

III. It is argued that Schultz and respondent had equal knowledge concerning the elevator and that, therefore, respondent assumed the risk. Schultz **Equal Knowledge.** knew how the elevator was operated and how to operate it. Respondent knew nothing about it. The assumption of fact upon which the argument is based is incorrect and the argument falls with it.

IV. It is urged there were errors in giving and refusing instructions.

1. It is said instruction numbered one authorizes a verdict without requiring a finding that the order given respondent was negligently given. The instruction requires the jury, before finding for respondent to find numerous facts, among others that in using and handling the elevator Schultz was in charge of the work and that plaintiff received his orders from Schultz and was required to obey him "in the doing of said work," and that at the time "the platform of the elevator was projecting above the sidewalk and in a condition or position so that it had to be shaken or forced into position before it would descend by the usual method, and if you further find from the evidence that said elevator could have been controlled and held in position and kept from dropping by the said Schultz while it was being shaken or forced into position, and if you further find from the evidence that if said elevator was caused or allowed to drop while it was being shaken into position and that it was reasonably likely to cause the plaintiff to fall or be thrown into the elevator and injured, and if you further believe and find from the evidence that the said Schultz knew, or by the exercise of ordinary care could have known of such facts, conditions and dangers, if they existed, and if you further find from the evidence that the said Schultz ordered the plaintiff to shake said elevator into position and that the plaintiff obeyed said order and shook said elevator for such purpose and in the manner referred to in the evidence; and if you further find from the evidence that the said Schultz caused or allowed said elevator to suddenly drop while the plaintiff was obeying said order, if such be the facts, and that the plaintiff was thereby caused to fall or be thrown into said elevator and to be injured, if he was, and if you further find that in so causing or allowing said elevator to be dropped at said time, if he did, the said Schultz was guilty of negligence, as negligence is elsewhere defined by these instructions, then you will

*Instruction: That Order Was Negligently Given.*

find for the plaintiff under this instruction, unless you further find from the evidence that the plaintiff assumed the risk or was guilty of contributory negligence as set forth in the other instructions." The facts required by the quoted part of the instruction to be found before a verdict for respondent was returned are, if found, such as to show that Schultz ordered respondent to perform an act which, in the circumstances, he knew or ought to have known was likely to result in injury to respondent. The facts predicated do not merely justify an inference of negligence. If found they conclusively show negligence in the giving of the order. In such circumstances it is not important that the jury was not asked to determine as a fact a thing that facts they were required to find before returning their verdict showed to be true as a matter of law. A recognition of this principle is found in cases cited by appellant on this point.

2. It is insisted that instruction numbered one "authorized a recovery and wholly ignored the fellow-servant issue." This overlooks the opening sentence of the instruction which required, before a verdict for respondent could be returned, a finding that

**Ignoring Issue of Fellow-Servant.** Schultz and respondent were in appellant's employ and in the performance of their duties for it and that "in using and handling the elevator in question at the time referred to in the evidence, if you find such to be the facts, the said Henry Schultz was in the performance of his duties for the defendant, and if you further find from the evidence that the said Henry Schultz was in charge of said work and of the plaintiff and that plaintiff received his orders from and was required to obey the said Henry Schultz in the doing of said work, and if you further believe and find from the evidence that at said time the platform of the elevator," etc. This is succeeded by that part of the instruction already quoted. It is clear from this first part of the instruction, as well as that which follows it, that a finding of authority and its exercise with respect to

the very business in hand at the time of injury was required as a condition precedent to a verdict for respondent.

3. Appellant's refused instruction numbered 5 dealt with contributory negligence. The subject was fairly covered by other instructions given for appellant. Besides, it is open to the construction that it authorized a verdict against respondent if the jury found he was guilty of any negligence whatsoever, however slight.

*Contributory Negligence.*

4. Instruction numbered 12 asked by appellant was modified by the insertion of the words which are enclosed in parentheses.

"If the jury from the evidence believe and find that any certain and specific injuries complained of by plaintiff were sustained by him as a direct result of the actual operation and movement of the elevator by Schultz and that Schultz and plaintiff were at the time of said occurrence fellow-employees of defendant (that is, neither had any authority or control over the acts of the other) and were engaged in a common task and undertaking of running and operating said elevator to effect and accomplish a delivery of beer, then as to such specific injuries, if any, so sustained, if so, plaintiff cannot recover in this case and you should allow him no damages on account thereof in your verdict."

*Modification of Defendant's Instruction.*

Appellant contends the words added by the court made Schultz's rank and not the nature of the act the test and told the jury "that the mere possession of authority by Schultz over the plaintiff, without regard to the nature of such authority, or the exercise thereof, made defendant responsible for all of Schultz's acts in the common service of these two servants." It is also argued that the modification converted the instruction so it meant that the "mere possession of authority or control of Schultz over plaintiff and the mere right to exercise it was sufficient in and of itself to justify a re-

300 Mo.—42

covery on account of such injuries, regardless of the fact whether Schultz was exercising such power and authority, and regardless of the character and nature of the act in which the two were engaged and which it is claimed caused plaintiff's injury.''

The instruction does not, in itself, authorize a finding for respondent under any circumstances. It tells the jury that if they find certain facts respondent ''cannot recover in this case and you should allow him no damages.'' Appellant will hardly deny that if the jury found all the facts predicated, even on its own construction of the instruction, a verdict for it would have been justified. There was no error in giving the modified instruction. The real contention must be that appellant was entitled to have Instruction 12 given in the form requested and that the modification so changed it as to make it less advantageous than the instruction as asked and less so than the law allowed. Considered from this point of view, appellant cannot complain of any uncertainty or error introduced by the language used in the instruction as it framed it in the first place. That request was an invitation the court received from appellant, and the court's acceptance of it furnishes no ground for complaint now. The clause added by the court did not change the instruction in such way as to affect the rule it laid down before the change. Unmodified it applied to the very time and act of operating the elevator at the moment when respondent was injured. If it had not done so, it would have been erroneous. It is explicitly made to do so by its language. The clause added is purely an explanatory clause. It is even introduced by the frequently used ''that is.'' The sole function of the clause is to explain the words ''fellow-employees.'' It is a qualifier of those words and takes its place in the sentence, in grammatical sense, as a part of them. It, consequently, bears the same relation to time, place and circumstances as do the words it qualifies. Whether these are sufficiently limited in these respects is not a question since their

limitations are those recommended by appellant's request. It may be said that they seem to be accurate enough. The authority and control mentioned in the added clause is authority and control as between the identical fellow-employees mentioned just preceding and as of the exact time, place and circumstance described in the instruction, both as it was asked by appellant and as given by the court. The contention made cannot be sustained.

5. Refused instruction numbered 13 told the jury that there could be no recovery for "any defect in the elevator mentioned in evidence, either because of the way it was constructed or because of its mechanism and appliances, or for the absence or lack, if any, of safety devices thereon." There was neither allegation nor evidence of any defect in the elevator because of its manner of construction, or because of its mechanism or appliances. Nor is there any allegation or evidence that the elevator was or was not provided with safety devices. The reference to defects "because of its mechanism or appliances" is not clear, but does not fairly seem to refer to defective mechanism or appliances but rather to structural defects. In any event, the instruction tendered issues not in the case in pleading or evidence, and the court was justified in refusing it.

Defects.

V. There was evidence that at times the packing around the plunger became loose and a little leakage would result. Schultz said he had called O'Rourk's attention to the fact that there was waste; that O'Rourk knew the elevator sometime would go "up and down, you know" when not being operated. These movements were slight, the record indicates. It is argued it was error to admit this testimony because there was no allegation in the petition that respondent's injuries resulted from these things. Now, the evidence also shows that if water wasted by reason of loose packing it was a thing easy, if not necessary, for one operating the elevator to discover. Schultz denies that he let

Leakage.

the water out by use of the wheel. There was only one other way for it to get out—by leakage of the kind described. The evidence objected to was competent to show that though it could be possible Schultz did not open the waste valve, yet the water escaped in a way observed by Schultz at the time and because of conditions of which he had previous notice. There was no effort to secure a verdict because the elevator leaked or was out of condition. The case rested upon the negligence of Schultz in what he did after the water had run out for some reason and left the plunger unsupported. The important facts are that it had run out, in one way or the other, and that Schultz knew it when he ordered respondent to shake the elevator hard. The suggestion that the elevator had not fallen before is discussed in another paragraph. The elevator had not previously been run off the guides by Schultz so that it would not come down in response to the wheel. The fact that the pipe was known to Schultz to have leaked theretofore was notice to him; and, if it is to be believed that he did not let the water out, then he, in the exercise of ordinary care, must have seen it leaking and must have known the result which would follow—an unsupported elevator, so far as water support was concerned. The objection made cannot be sustained.

VI. Certain testimony tending to show curvature of the spine was offered. It is insisted the petition furnishes no basis for this evidence and that it comes within the rule in Hall v. Coal & Coke Co., 260 Mo. l. c. 371, and like decisions. This objection was not made at the time the evidence was adduced. The questions which elicited it were direct and the answers responsive. The motion to strike out was made at a later time in the examination of the witness. The trial court cannot be convicted of error on this showing. Besides, the petition alleged, among other things concerning injuries, that respondent suffered a "mashing and bruising of the head, . . .

**Unpleaded Injuries.**

chest, back, hips and legs; . . . bruising, wrenching, straining and injuring the muscles, ligaments, tissues and nerves of . . . back, hips and legs; wrenching, twisting and shocking the plaintiff's spine, spinal column and nervous ligaments and tissues thereof.'' These allegations are sufficiently broad to cover the evidence in question. The testimony as to the break in the pelvic arch was competent, if not as a basis of recovery, to explain the shortening of respondent's leg—to show what operated to render him a cripple as charged.

VII. The point is made that the case was not properly for trial because an application to sue as a poor person and a subsequently filed motion for costs had not been disposed of, and that it was error to proceed with the trial. Three rules relating to the matter Motion for of assignments of causes, motions for costs, Costs. the making of applications for continuance and agreements of counsel appear in the record. When this matter was presented to the trial court he stated explicitly that under the rules the application came too late and that the rule so provided with respect to the sort of application then being considered. He did not confine himself to the rules which appear here. The ruling is not shown to be erroneous. Other questions are suggested, but are ruled in what has been said.

The judgment is affirmed. *Woodson* and *Ragland, JJ.,* concur; *Graves, J., dubitante.*