W. T. COY, RESPONDENT, v. D. H. DEAN AND MARBLEHEAD LIME COMPANY, APPELLANTS.*

Kansas City Court of Appeals.    January 3, 1928.

68

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 3057, p. 1068, n. 22; Evidence, 22CJ, section 545, p. 455, n. 74; section 548, p. 458, n. 85; section 758, p. 667, n. 56; section 800, p. 711, n. 75; Master and Servant, 39CJ, section 1354, p. 1173, n. 97; section 1411, p. 1228, n. 53; section 1590, p. 1359, n. 50; Negligence, 45CJ, section 493, p. 934, n. 68.

*S. L. Trusly* and *Edward E. Pugh, Jr.* for respondent.

*Jones & Jones* for Dean and Hancock.

*George A. Mahan, Dulany Mahan* and *Ezra T. Fuller* for appellant, Marblehead Lime Company.

ARNOLD, J.—This is an action in damages for personal injury. Defendants Daniel H. Dean and J. B. Hancock were jointly engaged as contractors and builders in the construction of a school building in Hannibal, Missouri, and plaintiff was in their employ as a common laborer.

In the process of constructing said school building an amount of crushed stone was used. This material was purchased from the other defendant the Marblehead Lime Company, a corporation, which operated a stone crusher near Hannibal. The accident and injury on which this action is based is alleged to have occurred on September 28, 1925.

The petition charges negligence of defendants Dean and Hancock in this: That plaintiffs and a negro driver named Conley were using a truck for the purpose of hauling rock from the crusher of defendant Lime Company to the said building and that Conley, the operator of said truck, suddenly, violently and without reasonable warning to plaintiff, started his said truck forward "when he knew of plaintiff's position in said truck and that plaintiff would likely be thrown and injured by such negligence and motion of said truck;" that the operator of said truck was further negligent "in that he started said truck forward in a manner so sudden and violent that it was likely to and did cause plaintiff to be so thrown and injured." That defendants Dean and Hancock were also negligent in that the brakes on said truck were insecure and would not hold or control said truck while being loaded; and the driver thereof had to keep the machinery engaged to hold said truck while being loaded and thereby said truck would be caused to start more suddenly and jerk more violently, and be more likely to cause injury to plaintiff.

The negligence charged against the Marblehead Lime Company is that it carelessly and negligently allowed and permitted one of its rock cars in which rock is carried from their quarry to their crusher to get loose and rush down "with great speed and creating frightening noises, and to have a violent collision with certain portions of said bin or structure and cause great wreckage, a loud and terrifying noise, causing fright to persons below and causing them to believe that they were in great danger of being crushed or injured; and by reason thereof, the driver of said truck caused it to be suddenly started forward without reasonable warning to plaintiff, and plaintiff was violently thrown backwards against portions of said truck and injured." This defendant is charged with further negligence in that it caused the tram car to leave the track and fall into portions of said structure and wreck part of said structure, creating terrific and terrifying noises, thus leading persons below to believe they were in great danger of being crushed, or killed, or injured, and by reason

thereof the driver suddenly set said truck in violent motion, without reasonable warning and caused the injury to plaintiff; that defendant Lime Company knew, or by the exercise of ordinary care should have known that such negligence would likely cause persons below to be injured. That "the negligence of defendants herein operated severally in causing plaintiff to be so thrown in said truck, and that by reason thereof" he was injured.

The separate amended answer of defendants Dean and Hancock is a general denial; and as affirmative defense pleads contributory negligence in that plaintiff failed to heed warning given him in ample time to have avoided the injury; that plaintiff and William Conley the driver of the truck were fellow servants engaged in a common employment. The separate amended answer of defendant, the Marblehead Lime Company, is a general denial, and as affirmative defense pleads that plaintiff and the driver were fellow servants, neither exercising any authority over the other, and that plaintiff's injuries, if any, were caused by the act of a fellow servant. The answer also pleads contributory negligence in that plaintiff failed and refused to heed a warning given him in ample time to have avoided the injury. The reply is a general denial. There was a verdict and judgment against both defendants in the sum of $1500. Motions for a new trial and in arrest of judgment were unavailing and defendants have appealed.

The facts developed are that the crusher building of the Marblehead Lime Company where the alleged injury occurred is located on a hillside near the city of Hannibal and the quarry is nearby. The main building faces approximately east and is about forty feet square, the concrete walls thereof being twelve inches in thickness. The building is divided into four equal apartments, or bins, by concrete partition walls twelve inches in thickness. At right angles with the west wall and outside of the main building near its center is a small building, known as the "crusher shanty" which is twelve by fourteen feet in dimensions. Directly west of the crusher shanty is the hopper which extends some fifteen to twenty feet west of the crusher shanty. On three sides the hopper is of concrete with a concrete floor sloping to the floor of the crusher shanty. In the floor of the shanty is an opening into the crusher beneath the floor thereof. West from the west end of the crusher shanty and extending partly over the said hopper is the end track of a small railroad which leads up the hill, the ascending grade being about three to five per cent, to the quarry. The part of the track over the hopper is about twenty feet above the hopper floor and about thirty to forty feet from the main building. Over this track the cars are run from the quarry and the rock so conveyed is dumped therefrom into the hopper. The quarry is about 325 feet southwest of the main buildings. The cars so used are small and the gross weight thereof when loaded with rock is approximately 3500 pounds. The cars are loaded by hand in the quarry and pulled

therefrom by a horse; the horse is then detached and a cable, controlled at the mouth of the quarry, is attached. On the date of the alleged injury one of these cars unattached to the cable ran down the incline to the end of the track, fell on the elevator shanty, crashed through it and lodged on the elevator belt located outside and west of the main building. This metallic elevator belt extended from beneath the crusher which is under the elevator shanty up at an angle of about forty-five degrees, and a "lean to" covered with rubberoid, or prepared roofing, was constructed for protection to the elevator belt.

It appears in evidence that one White, while in the act of hooking said car to the cable, was struck on the head and dazed by a falling stone and therefore failed to hook the cable to the car. The car was automatically detached from the horse and ran by gravity down the track and plunged into the elevator shanty, as above stated, with a loud and frightening noise. Testifying for plaintiff at the trial White was allowed to state, over the objection of defendants, that the rock which struck him came from the top of the loaded car; that he decided it came from the top of the car because "there was no other place for it to come from." The admission of this evidence is assigned as error. This witness further stated that he did not know how the car was loaded as he did not observe it. The point is not briefed, however, and we may consider it abandoned.

At the time of the accident the crusher with all the machinery was in operation with its attendant noise and rock was being crushed and distributed to points in the main building. When the car of rock fell on the belt the functioning of the elevator ceased but this did not interfere with the loading machinery. It appears there is a driveway for loading crushed rock about twenty-five to thirty feet east of the main building and parallel thereto, north and south. Over this driveway is a roof for the purpose of protecting a conveyor belt which carries the crushed stone from beneath the main building over the trucks for loading, the rock being placed on this belt underneath the concrete building or bins, and conveyed into a hopper over the driveway where it is dumped into the trucks. The driver Conley and plaintiff had come to the crusher for a second load and the truck was backed under the roof over the driveway and headed north. The cab was too tall to go under the roof extending over the driveway and Conley backed the rear end of the truck under the roof while plaintiff, in the body of the truck, was prepared to distribute the crushed rock therein by use of a shovel. It appears plaintiff was compelled to rest on one knee while at this work because the roof over the driveway was not of sufficient height to permit him to stand. They began loading the body of the truck at a point nearest the cab and when that part was loaded, plaintiff would call to Conley who remained seated in the cab and was in full charge of operating the truck, and direct

him to move the truck forward to another position, repeating this process until the truck was loaded.

Plaintiff testified that while thus engaged and on one knee, he heard a crash and about that time the truck started forward suddenly and without warning, going down the driveway some thirty to fifty feet, and plaintiff was thrown down backwards in the truck, sustaining injuries for which damages are sought. He stated that before the truck started he was on his right knee in the act of distributing the crushed stone in the bed of the truck, the same being about one-third full.

Plaintiff was permitted to testify that after the truck was stopped and he had arisen from his position in the bed of the truck, he asked Conley why he had started the truck *so suddenly* and that Conley replied there was a car of rock coming down and he was afraid it would kill him. This answer was admitted over the objections of defendants and this ruling of the court is made the basis of a charge of error.

It appears in evidence that the deposition of Conley was taken at the instance of plaintiff and was on file in the case but was not introduced and read in evidence by either of the parties. There is a conflict in the evidence as to whether plaintiff, in the work of loading the crushed rock in the truck, was working under the direction of Conley. Plaintiff states he was told by Rudder, superintendent for Dean and Hancock, to go with Conley and the truck and do what Conley told him to do. Rudder, who testified for defendants, stated he told plaintiff to go with the truck and load the rock; that Conley had no jurisdiction over plaintiff; that he had no "straw bosses" and that he had authority to tell any of them what to do.

It is in evidence that plaintiff and Conley received the same wages, to-wit, forty cents per hour.

Both appellants urge the judgment should be reversed because the injury to plaintiff, if any, was caused by his fellow servant Conley and that the court erred in refusing their peremptory instructions at the close of all the evidence. By their answers both defendants placed in issue the fellow servant rule. The facts show there was a different relation existing between plaintiff and the two defendants. It is admitted that plaintiff and Conley were in the employ of Dean and Hancock and were not employed by the Lime Company. It is necessary therefore that this point as applied to each of the defendants be considered separately.

The position of defendant Lime Company is that if the injury of plaintiff was due to the act of a fellow servant, no liability attaches to that company. The facts show the relation of master and servant did not exist between plaintiff and the Lime Company. *There was a general charge of negligence against the Lime Company in the peti-*

*tion,* and if that company may escape liability through the application of the fellow servant rule it must be for the reason that the rule applies in the case of the other defendant. The fellow servant rule is defined in section 4228, Revised Statutes 1919, and without quoting the section, the meaning of the words "fellow servant" is found to be all persons engaged in a common service and while so engaged are working together at the same time and place, to a common purpose of the same grade, neither of such persons being entrusted by the common employer with any superintendence or control over the other.

As stated above, there is testimony tending to show that plaintiff was directed by the foreman Rudder to go with Conley and load the truck as directed by Conley. There is evidence also that plaintiff knew nothing of the operation of the truck and that Conley did know and was in full charge of its operation. Conley handled the truck, a class of work entirely different from the work required of plaintiff whose duty it was to level the rock in the truck bed. We think under the rules applied to the facts herein, plaintiff and Conley cannot be held to have been fellow servants within the meaning of the law. The law is well settled in this respect.

In the case of McCauley v. Brewing Co., 300 Mo. 638, 254 S. W. 868, the Supreme Court determined this question against defendant's contention. In that case the driver of a truck ordered his helper to shake loose an elevator in the sidewalk while the driver manipulated the machinery below, and while the helper was engaged in shaking loose the elevator, the driver let the elevator fall and plaintiff was injured. The court held the driver and helper were not fellow servants, but that the defendant was liable for the driver's negligent act. The court followed a long line of decisions which are cited therein. We followed the same rule in Bennett v. Hood, 296 S. W. 1028. There is substantial testimony in the case at bar to the effect that plaintiff was told to do as directed by the driver of the truck. The question as to whether plaintiff and the driver were fellow servants was for the jury and there was no error in overruling the demurrers offered by defendants. [Evans v. Wheel Co., 273 S. W. 749; Motz v. Watson, 284 S. W. 837; Markley v. City, 286 S. W. 125.] An examination of defendants' citations on this point show they do not conflict with our holding.

It is also urged the court erred in refusing the peremptory instruction at the close of all the evidence because the petition on which the cause was tried alleges that plaintiff was directed "by his foreman or superior to go to said quarry on a certain truck operated for Dean and Hancock by said driver William Conley, and he was required to stand and be in said truck and level rock coming from the chute of the rock bin." It is argued that even though plaintiff was instructed, as he testified, to do as Conley told him yet Conley was his fellow

servant and the injury, if any, was due to the act of such fellow servant. We have decided this point against the contention of defendants and need not discuss it further. There was substantial evidence in support of plaintiff's allegation and the question was for the jury.

It is also urged in support of the appeal that the court erred in permitting Dr. W. L. Hollister, as an expert witness, to testify for the plaintiff that, in his opinion "the falling back by plaintiff in the rock truck when it was suddenly started by Conley caused the injury to his knee." This charge we hold to be without merit. Dr. Hollister's testimony was in answer to a hypothetical question which is long and involves some unnecessary elements, yet does include necessary elements, as shown by the testimony, forming a basis for the doctor's reply. The only objection urged was that the question invades the province of the jury. The objection was overruled and the witness's reply was based thereon. The question then was asked and answered. *The court properly ruled that the witness could not be limited to the question of whether or not the injury could, or might, have come from the violence referred to in the question.* It is the province of the jury to determine whether the injury alleged to have been sustained by the plaintiff was due to the accident yet the witness, as an expert was properly allowed to testify that in his opinion the injury was so caused. [Mahaney v. Rys. Co., 328 S. W. 821, 826; O'Leary v. Steel Co., 260 S. W. 55; Kinchlow v. Railways (Mo.), 264 S. W. 416; Meyers v. Wells, 273 S. W. 110, 115.]

A similar charge of error is lodged against the admission in evidence of the hypothetical question propounded to Dr. H. E. Songer and the answer thereto, the complaint being that the question did not substantially embody and accurately state all the material facts on which the testimony of the witness was sought. The record shows an objection was made to the question and that counsel for plaintiff requested defendants' counsel to supply any additional facts, but this request was refused. Under these circumstances there was no error in the ruling of the court on this point. [Standefer v. Fleming et al., 298 S. W. 134, and cases therein cited.]

It is strenuously urged the court erred in permitting plaintiff to state to the jury what the driver Conley told him was his reason for starting the car as, and when, he did. The record shows the following occurred:

"Q. When he stopped was anything said by you or by Conley to you? A. I asked what made him do that."

An objection was interposed at this juncture based chiefly upon the fact that the question called for hearsay evidence and because the statement of the driver could not be binding upon defendants. The court ruled as follows:

"Gentlemen, I think the rule is, it is incompetent for an employee or servant to make statements, giving a history of the injury in question; I say a history of it, but I think there is an exception to that rule which may be called an exception where it can be brought under the doctrine of *res*; the objection will be overruled."

The witness testified that the truck ran thirty to fifty feet, that "just the minute after we had stopped I asked Conley what made him do it." The witness was asked "What did he say?" The objection was renewed and was overruled. Again, on being asked what Conley said, the witness answered: "He said there was a car of rock coming down and he was afraid it would kill him." The court overruled an objection to the answer.

In disposing of this charge of error it is necessary to determine whether or not the conversation to which the witness testified may be considered a part of the *res gestae*. As tersely stated in Bouvier's Law Dict., Vol. 3, p. 2905, *it is the "transaction; thing done; the subject-matter."* It has been held in this State that declarations or acts accompanying the fact in controversy and tending to illustrate or explain it, as conversations contemporaneous with the facts, are part of the *res gestae*. [State to use v. Mason, 112 Mo. 374; Brockett v. Steamboat Co., 18 Fed. 156; Weir v. Plymouth Borough, 148 Pa. 566, 24 Atl. 94; Kleiber v. Railway, 107 Mo. 240; State to use v. Schneider, 35 Mo. 533; Greenlee v. Casualty Co., 192 Mo. App. 303, 182 S. W. 138.] There was testimony to the effect that plaintiff was under the immediate direction of Conley at the time the rock was being loaded and at the time of the occurrence herein described; that the witness related the first words spoken after the truck had been stopped; that the language was "just the minute he stopped after we had stopped." We think, under the above rule there was no error in the admission of the testimony objected to, under the facts shown by the record. [Standard Oil Co. v. Johnson, 299 Fed. 93; State v. Martin, 124 Mo. 514; Pryor v. Payne, 304 Mo. 560, 567, 569, 263 S. W. 982.]

It is urged in behalf of both defendants that instruction No. 1 for plaintiff is erroneous in that it does not contain any of the elements required to fix liability on defendant Lime Company. It is not deemed necessary to set out the instruction in full herein. An examination of the instruction shows that it is not open to the objection urged. The first paragraph requires a finding that plaintiff had no warning of the precipitate movement of the truck; the second, that the detached rock car would lead persons in and about the buildings to believe they were in danger; third, that the Lime Company knew the facts upon which a finding was asked in paragraph 2; and paragraph 4 requires a finding that the defendant Lime Company was negligent in allowing the car to get loose and fall into the structure and cause a wreck and noise; that such negligence caused the injury, and that

plaintiff was in the exercise of ordinary care. Thus, every element necessary for plaintiff's recovery is required to be found by the jury.

Defendant Lime Company strenuously urges that its negligence, if any, was not the proximate cause of the injury. As stated the petition charges the Lime Company negligently allowed and permitted one of its loaded cars to run wild down the track, collide with the buildings, cause a frightening noise and that the driver of the truck was thereby caused to believe he would be injured or killed, hence the sudden starting of the truck without warning and hence the injury. This court in Daneschocky v. Sieble, 195 Mo. App. 470, 193 S. W. 966, opinion by ELLISON, P. J., aptly states the established rule as to proximate cause. Quoting from that opinion, l. c. 473:

"Lawyers from early times, induced by the ordinary meaning of words, and seeming necessity, have been led into the thought that since the word, "proximate' means immediate or next to, the only actionable cause is the cause which actually did the injury; and that any prior cause, no matter how closely related, was a removed cause and therefore not proximate, and therefore not actionable. There is no doubt that many decisions have been rendered and many definitions stated on that idea. . . .

"When the rule is stated in its full breadth, viz., that a separate intervening cause will break the line of causation leading out from the first cause and, in law, absolve the first cause from all responsibility, it is the statement of a mere arbitrary rule, which in practical application, would lead to results opposed to sound reason. The rule should always be accompanied by the qualification, 'that if the intervening act is such as might reasonably have been foreseen or anticipated as the natural or probable result of the original negligence, the original negligence will, notwithstanding such intervening act, be regarded as the proximate cause of the injury.' "

It follows therefore that an intervening cause may not be held to excuse the first cause, unless the intervening cause is so unusual and improbable as not to have been reasonably foreseen or considered by an ordinarily careful and prudent man. To the same are Frankel v. Hudson (Mo.), 196 S. W. l. c. 1123; Buckner v. Horse & Mule Co., 221 Mo. 700, 120 S. W. 766; Carr v. Supply Co., 293 Mo. 562, 239 S. W. 827. *The negligence charged against defendant Lime Company is general.* It is admitted the car was permitted to get loose and run wildly down the track and collide with the building. There was testimony of a substantial character tending to support the charge as pleaded. The verdict of the jury will not be disturbed therefore in this respect.

The question of proximate cause is defined in defendant's instruction "C." The objection urged against plaintiff's instruction No. 1 is therefore not tenable. [Kinchlow v. Rys. Co. (Mo.), 264 S. W. 416,

77

420; Delfosse v. Ry. Co., 201 S. W. 860, 863; Stanley v. Helm, 204 Mo. App. 159, 223 S. W. 125.]

It is urged that under the rule applied in Kleiber v. Ry. Co., 107 Mo. 240, and in later cases, it has been the rule in this State that in order to render the defendant Lime Co. liable in such case, the jury must find: (1) That the alarm was caused by defendant's negligence; (2) that the apprehension of peril from plaintiff's standpoint must be reasonable, and (3) that the appearance of danger was so imminent as to leave no time for deliberation. *That the instruction complained of covers these points is beyond question;* furthermore, the instruction conforms to the allegations and proof. We rule against defendants on this point.

This ruling covers objections urged by defendant Dean and Hancock that instruction No. 3 is erroneous because it entirely ignores and omits the element of fright caused by the crashing of the runaway car, leading Conley to believe there was appalling danger and imminent peril confronting him. This instruction was given on plaintiff's behalf and applied to defendant Dean and Hancock and contains all the elements necessary for a finding in plaintiff's behalf against them. It requires a finding that plaintiff was in peril; that Conley knew it in time to have warned plaintiff. The instruction was not erroneous in the respect charged.

Instructions given in behalf of defendants fully covered all necessary elements of defense. [McCauley v. Brewing Co., 300 Mo. 638, 657, 254 S. W. 868.]

The above rulings cover all issues raised. We find no reversible error of record, and the judgment is accordingly affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.