## MARGARET STANLEY, Appellant, v. ANNA M. HELM, Respondent.

### Kansas City Court of Appeal, May 10, 1920.

1. **Negligence:: Automobiles: Pedestrian.** It cannot be said as a matter of law that one who operates a swiftly but silently moving automobile at the rate of ten miles per hour, going in a westerly direction, who suddenly and without warning turns south and across the pathway of pedestrians and approaches within six or eight feet of them is not negligent, and it is erroneous to direct a verdict on such a state of facts.

2. ———: ———: ———: **Proximate Cause.** Where plaintiff in imminent peril as the result of the negligence of the defendant, falls and is injured in an attempt to avoid being struck, the negligence of the defendant is the proximate cause of the injury; the principles of liability in such case are (1) that the peril must be caused by the negligence of the defendant, (2) that the apprehension of the peril, from the standpoint of the injured person, must have been reasonable, and (3) that the appearance of danger must have been so imminent as to leave no time for deliberation.

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird,* Judge.

REVERSED AND REMANDED.

*Clif Langsdale* for appellant.

*A. L. Berger* and *Morrison, Nugent & Wylder* for respondent.

TRIMBLE, J.—At the close of plaintiff's case the trial court sustained a demurrer to the evidence and directed a verdict for defendant, and from the judgment rendered thereon, the plaintiff has appealed.

The petition, after alleging that she stepped off the sidewalk at the southwest corner of 15th street and Grand Avenue and proceeded across Grand Avenue to the southwest corner of said streets, set up that—

"after the plaintiff had stepped off of said sidewalk into said street, as aforesaid, and while she was between said sidewalk and the said south bound street car tracks, the defendant's said agent and chauffeur in charge of said automobile who had been driving said automobile from the east across said intersection of said streets, carelessly and negligently, suddenly and without warning, when said automobile was only a short distance away from plaintiff, turned said automobile in a southerly direction toward plaintiff; that at said time plaintiff was directly in the path of said automobile and was about to be struck thereby, and in her effort to get out of the path of said automobile and keep from being struck by the same, stumbled and fell, and was injured," etc. For a further assignment of negligence the petition charged that at the time—

"The said chauffeur carelessly and negligently, suddenly and without warning, turned said car in a southerly direction toward plaintiff as aforesaid, said car was traveling at from ten to fifteen miles an hour, and that plaintiff, who was at said time directly in the path of said automobile, believed that she was about to be struck by said automobile and injured, and that in her effort to get out of the path of said automobile, she stumbled and fell, and was injured," etc.

The evidence in plaintiff's behalf tends to prove the following facts:

Plaintiff, a large, fleshy and heavy woman, accompanied by her husband and an adopted son about 13 years of age, was down town in Kansas City on the afternoon of September 27, 1917, viewing a parade of

soldiers. After doing this, they walked to the south-west corner of 15th street and Grand Avenue to catch a car home, they living in the east part of the city. After standing there awhile they concluded to walk east on 15th street to McGee street that being the next one to Grand Avenue, where they thought their chances of catching an east bound car, coming north on McGee to 15th, would be better. Plaintiff, holding her boy by the hand (her left) and with her husband behind her, started from the sidewalk, at the southwest corner of 15th and Grand, going east across Grand Avenue to the south-east corner of said intersection. Just before she stepped off the sidewalk into the street she looked north up Grand Avenue to see if the way was clear, and finding that it was, she started east across Grand Avenue. She had gotten "four or five good steps" out into the Avenue from the curbing when defendant's automobile (driven by a negro chauffeur), which came from the west along 15th street and was going east across the intersection, suddenly and without warning and when only a few feet from plaintiff, turned south toward plaintiff and the boy and still without warning proceeded toward them. Plaintiff, looking around, saw it coming toward and near her, and, thinking she and the boy would be run down if they did not get out of the way, she pushed her boy back and turned quickly to the left in an effort to escape. In doing so she fell and fractured the neck of her left femur, it being the part that joins the head of the femur (which fits into the hip socket), to the femur itself. The evidence is that she is crippled for life, never being able to use the leg again in walking. When she fell she attempted to get up but fell again, and by this time the automobile had stopped at a distance of two or three feet from her. Plaintiff was directly in front of it when she fell and when it stopped. Speaking of the car, she said, "I saw it for the instant. It was coming so rapidly that my attention was on getting out of the way." Upon objection, however, the court struck out the "coming so rapidly" part

as a conclusion. She said she thought the automobile was six or eight feet from her when she learned of its presence and it was coming directly towards her. She further testified that she did not hear any horn, or signal or sound of any kind.

Fifteenth street, on the west side of Grand Avenue, is thirty-one feet ten inches wide from curb to curb. From the south rail of the street car track on 15th street to the sidewalk on the south side of said street is nine feet, four inches. The sidewalk on the south side of 15th street is seven feet wide. Plaintiff, when she stepped off this sidewalk to cross Grand Avenue, was somewhere in the middle portion of the sidewalk for there were people to the north and south of her while she was on the sidewalk. Grand Avenue, at the south side of 15th street, is sixty-nine feet nine inches wide.

Mrs. Angle, an acquaintance of plaintiff, was on the sidewalk close to plaintiff when the latter stepped from the sidewalk into the street. She testified that when plaintiff stepped off the sidewalk to cross the street the automobile was going west; that when plaintiff and her boy were four or five steps out into the street the automobile turned south. Speaking of the automobile she said "it came so quick it looked just like it was going to run over her." On motion, the court struck out the words that it was "coming so quick." Further on, the witness said "the car was coming towards her and it looked like the car was going to strike her." The trial court struck out the part of the answer "that it looked like the car was going to strike her," and directed the jury not to consider it. Witness said plaintiff fell and the car stopped "just about two feet from her." Witness further said she heard no horn or signal given by the chauffeur or anyone else.

A traffic policeman who was assigned to the intersection at 15th and Grand during the parade was in the center of the intersection directing the traffic at the time of the plaintiff's fall. He testified as a witness in her behalf. He says that when he saw the automobile it was

in 15th street and east of the intersection and he gave
it the signal to go west; that the chauffeur gave no in-
dication or signal that he desired to go south or in any
direction other than west the one the automobile was
going. After the policeman gave the signal to go west
the automobile went west on the south side of the street
and then turned south. Witness was watching the car,
and plaintiff and the boy were in the street "headed
going east on fifteenth street" when the automobile
made the turn. Plaintiff fell and the automobile was
about two or three feet from her. When asked at what
rate the speed the car was going when it made the turn
he said, "I don't know as I could give the rate, he made
a good turn there; I judge about ten miles an hour,
somewhere along there. Q. About ten miles an hour?
A. About ten miles." He further testified that he
started to take the chauffeur to the station but plain-
tiff's husband didn't want him arrested, so he didn't do
it. Witness was asked if the chauffeur sounded any
bell or horn as he made the turn, and answered that he
did not, but, on objection this was stricken out. He was
allowed, however, to testify that he heard no signal
given. He had previously said that he was looking at
the car as it turned south and on cross examination had
said that his orders were, on account of the parade not
to allow traffic to go south but only east and west, and
that was the only way the traffic was supposed to go,
and gave this as the reason for his attention being
drawn to the car. The evidence as to the traffic not
being allowed to go south was stricken out. Later, how-
ever, under examination by the court, witness was
asked if he signalled the chauffeur to stop and said he
didn't, and was then asked if he didn't say awhile ago
that on that day at least he would not allow the chauffeur
to turn and go south, and witness said he did so testify.
He further said he saw the chauffeur when he was turn-
ing, saw him turning straight south and he started over
there but he had already stopped when he got there.
This tends to show that it happened very quickly; that

even the officer had no reason to think the automobile was going to turn south until it did so turn and the injury occurred and the car stopped before the officer had opportunity to do anything. The officer also testified that he noticed marks on the street where the wheels slid upon the pavement when the brakes were applied.

Plaintiff's adopted son testified that they, his mother and he, started to go across the street (which was Grand Avenue and they were going east), his mother holding him by the hand "and the car was coming on Fifteenth Street *west* and we did not know it was going to turn, *but all at once it turned and went south* and as it did Aunt Maggie kind of threw me back and had started, to take a step and fell . . . and the car stopped right in front of her." When asked where he and the plaintiff were when the car started to turn, he said: "We were about half way between the car track and the curbing." He also said he saw the car coming across the street but it didn't look like it was going to turn, and that he saw no signal of sign of any kind from the chauffeur, nor did he hear any horn. The evidence was that plaintiff was proceeding across the street in an ordinary walk.

Under the foregoing evidence we think that plaintiff made a case sufficient to go to the jury, and that it was error to give the peremptory instruction to find for defendant.

At the time the injury occurred, the Motor Vehicle Act of 1911 was in force, and paragraph 2 of section 8, of which reads as follows:

"Upon approaching a pedestrian, who is upon the traveled part of any highway and not upon a sidewalk . . . every person operating a motor vehicle shall slow down and give a timely signal with his bell, horn or other device for signalling." [Laws, 1911, p. 327.]

Sec. 9 of said Act is as follows:

"Every person operating a motor vehicle in the public highway of this State shall drive the same in a careful and prudent manner and at a rate of speed so

as not to endanger the property of another or the life or limb of any person.'' [Laws 1911, p. 327.]

And paragraph 9 of section 12 of said Act provides that—

''Any person owning, operating or controlling an automobile running on . . . public . . . streets . . . or places much used for travel, shall use the highest degree of care that a very careful person would use, under like or similar circumstances, to prevent injury . . . to persons on, or traveling over, upon, or across such . . . streets . . . Any owner, operator or person in control of an automobile, failing to use such degree of care, shall be liable in damages to a person . . . injured by failure . . . to use such degree of care.''

Even without the foregoing statutory regulations and even if they do not apply in all of their terms to the present situation, we do not see how we could say, as a matter of *law*, that one who drives a swiftly but silently moving automobile at the rate of 14.6 feet per second along a street, going in a direction which apparently will not interfere with but is merely parallel to the course of a woman and child who are crossing an intersecting street from one corner to the other, and then suddenly turns said automobile across the pathway of the pedestrians without sound, warning or signal of any kind, and approaches within six or eight feet of them, is not negligent even if he does succeed in stopping his car before striking them. Nor are we able to say, as a matter of law, that the operator of such a vehicle thus suddenly coming without warning toward, and so close upon, a large and fleshy woman leading a child by the hand, would have no reason to anticipate that the instantaneous and unexpected appearance of such a ponderous and dangerous instrumentality would result in injury to the pedestrian through the fright thus engendered and the instinctive effort to avoid being crushed. Neither can we say that *conclusively* plaintiff had no reason to be frightened when she suddenly be-

came aware of the immediate presence and swift approach of the car thus suddenly and unexpectedly turning upon her. She had no reason to apprehend that the chauffeur would turn aside and go around her, because he turned *toward her* and she was *in his very path.*

. Even though the plaintiff was not struck by the automobile, her injury was proximately caused by the negligence of the chauffer in thus placing her, suddenly and without warning, in what seemed to her was imminent and deadly peril in the frantic effort to escape which she fell and was injured. Under the authorities, the principles governing liability in such cases, are: 1. That the peril, or the alarm, must be caused by the negligence of the defendant. 2. The apprehension of peril, from the standpoint of the injured person, must have been reasonable. 3. The appearance of danger must have been so imminent as to leave no time for deliberation. [Kleiber v. Peoples R. Co., 107 Mo. 240; Delfosse v. United Railways Co., 201 S. W. 860, 863; Ephland v. Missouri Pacific R. Co., 57 Mo. App. 147; Same v. Same, 137 Mo. 187; Bischoff v. Peoples Railway Co., 121 Mo. 216; Moon v. Metropolitan St. Ry. Co., 189 Mo. App. 555; Agnew v. Metropolitan St. Ry. Co., 178 Mo. App. 119.]

We think the case should have been allowed to go to the jury. The judgment is therefore reversed and the cause is remanded for a new trial. All concur.