Thomas H. Phillips, Appellant, v. Yellow Cab Company et al.,
Respondents.—36 S. W. (2d) 419.

Kansas City Court of Appeals.    January 5, 1931.

*Harry G. Kyle* and *Walter A. Raymond* for appellant.

*Hogsett & Boyle* and *Charles L. Carr* for respondents.

ARNOLD, J.—A suit in damages for personal injury.  The facts
are as follows:  Plaintiff instituted this action against the Yellow
Cab Company and A. D. Sizemore.  The defendant, Yellow Cab Com-
pany, is a corporation engaged as a common carrier, operating a
number of taxicabs in the city of Kansas City, Missouri.  Defendant

Sizemore is a citizen of Kansas City and owns and drives an automobile. Plaintiff was and is a skilled laborer and at the time of the injury complained of was a resident of Kansas City, and on June 3, 1927, was in the employ of one Holcker as a builder of automobile bodies. On the day in question, plaintiff worked until about five o'clock P. M., quitting time. He and a friend named Brock walked west on the north side of Fifteenth Street in Kansas City, Missouri, to Garfield Avenue, a street running north and south, intersecting Fifteenth Street at right angles. Plaintiff and Brock crossed Garfield Avenue and then turned south on the west side thereof, and thence walked south along the allotted space used by pedestrians across Fifteenth Street.

At that time an automobile driven by defendant Sizemore was being driven east on the south side of Fifteenth Street and approaching the intersection. About two car lengths behind the Sizemore car and a little to the north thereof, and going in the same direction, was a Ford car operated by one Dwight E. Beatty, in which were riding Beatty's wife and Homer C. Adams. The Sizemore and Beatty cars, as shown by the evidence, were being operated at a speed of approximately fifteen miles per hour. As the cars approached Garfield Avenue, one of defendant's yellow cabs, going eastward, passed the Beatty car on the left, at a speed variously estimated at thirty-five to forty-two miles per hour. The yellow cab was astride the south rail of the eastbound street car track and the Sizemore and Beatty cars were between the car tracks and the south curb of Fifteenth street.

The street car company, which is not involved in this suit, maintains a double line of track on Fifteenth street. Plaintiff's evidence tends to show that the yellow cab did not slacken its speed as it approached the intersection, and was headed directly at plaintiff and Brock. Plaintiff observed the cab at a distance of about sixty to eighty feet west. Plaintiff testified he could not estimate the speed of the cab but thought he could cross the street before the cab entered the intersection, and he proceeded in a straight line south. When he reached a point in line with the approaching cab, he saw it coming toward him and about fifteen to sixteen feet distant. The testimony is that plaintiff and Brock had just crossed the south rail of the east bound track when they both jumped, or ran, to get out of the line of the oncoming cab. It appears that Brock did not jump or run as far as plaintiff and was not struck; but that the left front fender of the Sizemore car struck plaintiff and knocked him to the street, severely injuring him. The yellow cab did not strike plaintiff, did not slacken its speed but proceeded across the intersection. The testimony is that the Sizemore car missed striking Brock by a distance of about two feet. Plaintiff was picked up and taken into a store nearby, from whence he was taken in an ambulance to the

General Hospital, where he was confined for about eight weeks. On examination plaintiff was found to have sustained five fractures of the pubic and sacral bones.

The amended petition alleges negligence, as follows:

"That the agent and servant of the defendant Yellow Cab Company negligently and carelessly drove said cab down said 15th street and into said intersection at a high and negligent rate of speed, to-wit: thirty to forty miles per hour, and directly towards the plaintiff creating an emergency and creating a reasonable apprehension in plaintiff's mind that unless he ran to the south he would be struck by said cab, and in attempting to get out of the way of said cab and acting in said emergency plaintiff ran towards the south and in front of said cab and was struck by said automobile driven by the defendant Sizemore; that the defendant Sizemore was guilty of negligence in that he failed to stop or swerve his automobile to one side and thus avoid striking the plaintiff; that he negligently drove said automobile into a violent collision with the plaintiff after he saw or by the exercise of highest degree of care could have seen plaintiff in a position of peril in time by the exercise of the highest degree of care to have stopped his said automobile, slowed down the same, or to have swerved the same to one side in time to have avoided the accident, but he negligently failed to do so."

Damages are sought in the sum of $7500. The separate amended answer of the Yellow Cab Company is, first, a general denial, and as affirmative defense pleads contributory negligence. The answer of defendant Sizemore is a general denial. The reply also is a general denial. The cause was tried to a jury. At the close of plaintiff's evidence, defendant Yellow Cab Company asked an instruction in the nature of a demurrer to the evidence, when the following occurred:

"THE COURT: The court gives instruction numbered 'A,' being a demurrer asked for by the Yellow Cab Company. To which ruling the plaintiff is allowed his exceptions.

"MR. KYLE: We except to the ruling of the court in sustaining defendant Yellow Cab Company's demurrer.

"MR. KYLE: The plaintiff takes an involuntary nonsuit with leave to move to set the same aside.

"THE COURT: The court indicating the court will sustain a demurrer, the plaintiff takes a nonsuit with leave to move to set the same aside.

"MR. KYLE: The plaintiff dismisses as to defendant Sizemore."

Thereafter and in due time plaintiff filed his motion to set aside the nonsuit taken with leave, which motion was overruled, and from this ruling plaintiff has appealed.

The only point involved in this appeal is whether the court erred in overruling the motion to set aside the nonsuit; and in this con-

nection plaintiff insists the court erred (a) in refusing to submit to the jury the question of defendant's negligence; (b) in holding plaintiff was guilty of contributory negligence. Under point "a," it is insisted there was substantial evidence in plaintiff's behalf in support of the allegation that defendant Yellow Cab Company was guilty of negligence. In considering the demurrer we are mindful of the rule that the plaintiff's evidence must be taken as true, and that he is entitled to all reasonable intendments thereof, as well as any favorable evidence introduced in defendant's behalf. The evidence of record by all reasonable intendment shows defendant's driver drove the cab into the intersection at a speed variously estimated at from thirty to forty-two miles per hour at the time it was passing the Sizemore and Beatty cars, the three cars moving toward the east; that, without slackening speed, the cab bore down upon plaintiff, making it necessary for him to move quickly out of its path.

The testimony shows plaintiff first saw the cab approaching when it was sixty to eighty feet away; that he thought he had time to cross ahead of it, and so proceeded; that when he next saw the cab it was some fifteen to sixteen feet away from him and coming at a high rate of speed; that he thought it necessary to leap to avoid it and in so doing, he was struck by the Sizemore car which, as the evidence shows, was some ten to fifteen feet south of the cab, but when passing plaintiff, had swerved somewhat to the north. The testimony is not clear as to whether plaintiff was struck by the sizemore car or whether he ran against it. We think this point not material here because if the alleged negligence of the cab driver placed plaintiff in what he conceived to be a position of peril, and caused him to make a sudden or frantic effort to escape, and in so doing he was struck, or ran into or against the Sizemore car, the difference is immaterial. Plaintiff states he did not look and did not see the Sizemore car. It was held in Stanley v. Helm, 204 Mo. App. 159, 223 S. W. 125:

"Under the authorities, the principles governing liability in such cases, are: 1. That the peril, or the alarm, must be caused by the negligence of the defendant. 2. The apprehension of peril, from the standpoint of the injured person, must have been reasonable. The appearance of danger must have been so imminent as to leave no time for deliberation." [Citing cases.]

In that case the defendant's automobile came sharply around a corner, causing the plaintiff to jump out of the way of the car and to fall and injure herself. The court held that even though the plaintiff was not struck by the car, her injury was proximately caused by the negligence of the chauffeur in thus placing her, suddenly and without warning, in what she deemed was imminent deadly peril, when, in her frantic efforts to escape, she fell and was injured. It is contended the result and conclusion would be the same if plaintiff herein, by reason of his peril (as he believes), had jumped into

a telegraph pole or other immovable object. We think there is much in this line of reasoning.

Defendant urges the demurrer was properly sustained in that plaintiff made some damaging admissions in his testimony, as follows:

"Just prior to being struck I saw the yellow cab coming. It was sixty to eighty feet away. I saw it approaching, but I thought I had time to pass it. It was coming directly toward me. I moved to get out of the way but have no idea how far I moved. The next thing I knew I was hit by a car, and I didn't remember anything."

This quotation, however, does not include testimony to the effect that plaintiff did not jump or run until he again saw the cab coming directly toward him and within fifteen to sixteen feet of him. Defendant quotes further from plaintiff's evidence what it considers damaging admissions, as follows:

"I have lived in Kansas City about thirty-eight years, and was familiar with the fact that Fifteenth street is a very busy street, one of the 'arterial highways.' I was familiar with the fact, when crossing this street, that I was crossing one of the busiest streets in town at that hour of the evening. I saw this taxicab sixty to eighty feet west of me. At that time I was in its path. I have no idea how fast the cab was moving. As a matter of fact, the speed of the cab made no impression on my mind at the time. So that I was not influenced by the speed of the cab in what I did; I just saw it coming and figured I had time to get out of its way, and went on my way. After I passed out of the path of the cab I have no idea how far I went before coming in contact with the other car; I cannot give any light on the question of distance at all, whether it was ten feet, twelve feet or fifteen feet. I never did see the car that hit me. I don't know whether I walked into the side of it, or the left front fender of it, or where I walked into it; I don't know how I was hit by it. I was not looking east but was looking straight south, and the car that I walked into, or jumped into, must have been coming from the west. It was broad daylight; but I never did see the car that I walked into.

. . . . . .

"In my cross-examination I stated that the cab was about sixty to eighty feet away when I first saw it. I kept on going. When I saw the car again it was pretty close to me, something like fifteen or sixteen feet. When I saw it within fifteen or sixteen feet, I moved very quick, whether I ran or jumped I don't know, to get out of the way of the car.

. . . . . .

"In my deposition in this case given February 17, 1928, I testified that when I first saw the yellow cab I gave it no more attention than I do any other automobile; that when I go along a street I glance to see if there is a car near; and if I think I can beat it across, I go

over; and that on this occasion I just glanced at the cab and did not look at it any more after I just glanced at it. I also testified in my deposition (and it is the truth) that I thought I had plenty of time to go on across the street.''

From this testimony defendant does not contend that plaintiff was guilty of contributory negligence as a matter of law in not making an effort to sufficiently observe the yellow cab as to its speed when he first saw it or in not making any further effort, after he first saw it, to judge of its speed, but contends plaintiff's companion, Brock, was not injured because he stood still in the space between the cab and the Sizemore car, a space of seven to fifteen feet, and that plaintiff might have stood still and escaped injury, but that instead, he moved on south and ran directly into the Sizemore car, without ever seeing it at all, although it was broad daylight.

We think the jury might have been warranted in holding this testimony was not conclusive as to plaintiff's contributory negligence, and they might well have believed that it was reasonable for plaintiff to feel he was in imminent peril of being struck when he jumped. The same line of reasoning is found in Coy v. Dean, 4 S. W. (2d) 835, and in Highfill v. Wells, 16 S. W. (Mo.) 100. In the case last cited, the court held the issues should have been submitted to a jury in a similar case where the plaintiff was driving an automobile and was held to the highest degree of care for his own safety, instead of merely ordinary care as in the case at bar. As the situation appeared to plaintiff herein, he had reasonable cause to believe he could safely proceed in front of it, and he did not jump until he saw the cab again fifteen to sixteen feet away and coming directly toward him. Under these circumstances we hold it was for the jury to say whether or not plaintiff was guilty of contributory negligence. [Threadgill v. Railways Co., 297 Mo. 466, 214 S. W. 161, and cases therein cited.]

Defendant, in its brief, urges that the act of defendant's driver in exceeding the speed limit authorized by a city ordinance was not the proximate cause of the injury, as shown by the evidence. In Wengert v. Lyons, 273 S. W. 143, this court said, in effect, that proximate cause has been defined to be that which in a natural and continuous sequence, unbroken by any new cause, produces the event, and without which the event would not have occurred. [Citing Dickson v. Railroad Company, 124 Mo. 140, 27 S. W. 476.] The general rule in this respect is found in 29 Cyc. 490, 491:

''It is not necessary that the cause of the injury should be the immediate, the last, or the nearest cause in time or distance to the consummation of the injury. It is sufficient if it be the efficient cause which set in motion the chain of circumstances leading up to the injury, and which in natural, continuous sequence, unbroken by any new and independent cause, produced the injury. The primary cause will be the proximate cause where it is so linked and bound

to the succeeding events that all create or become a continuous whole, the one so operating on the others as to make the injury the result of the primary cause.''

Here it must be held the question of proximate cause was one for the jury. The petition alleges the driver of the yellow cab was driving at a ''dangerous and negligent rate of speed.'' The testimony shows the speed was variously estimated at thirty to forty-two miles per hour. The petition charges primary, or common-law negligence. The city ordinance limiting the speed of cars in the city was introduced in evidence. The ordinance prohibits the driving of motor vehicles on the public streets, boulevards, parkways, park roads, alleys, or other public highways within the city for a distance of 200 feet, more than fifteen miles per hour, provided, however, that on all park drives designated as arterial highways and which serve as connecting links for through travel and are outside the congested district, paragraph (b) shall govern.

''Twenty-five (25) miles per hour upon all other streets, roads or public highways within the limits of Kansas City; provided, however, that in passing any street car intersection, crossing or crosswalk within the limits of Kansas City, Missouri, the rate of speed for traffic shall not exceed fifteen (15) miles per hour when any person or vehicle is upon said intersection, crossing or crosswalk with whom or with which there may be danger of collision.''

And so, from the evidence, the jury might well have concluded the driver of the cab was negligent in driving the same at a dangerous and negligent speed, had the cause been submitted to them. In Hodges v. Chambers, 171 Mo. App. 563, 154 S. W. 429, the court held the rule, with respect to pedestrians crossing or walking on railroad tracks, is the very presence of such tracks is a warning, but this rule has no application to pedestrians crossing or traveling on a public street and having the right ''to presume that one driving an automobile would exercise that degree of care enjoined upon him by law.'' This principle is so sound and so in line with modern conditions that it ought not to be questioned anywhere.

Defendant raises the point that the appeal should be dismissed, because, according to plaintiff's record, his so-called involuntary nonsuit was, in fact, voluntary, and no appeal lies. This contention we hold to be without merit. The record shows the court said:

''The court gives instruction numbered 'A,' being a demurrer asked for by defendant, the Yellow Cab Company.''

In support of its contention defendant states it does not clearly and unequivocally appear from the recitals that the demurrer was actually sustained; but that it rather appears the court announced, or indicated, he would sustain it, and plaintiff thereupon took a nonsuit. The record does not sustain this contention. The court gave the instruction and plaintiff's counsel excepted to the ruling and

thereupon took a nonsuit, with leave; at the same time dismissing as to defendant Sizemore.

For the reasons above stated, the judgment is reversed and the cause remanded. *Bland, J.,* concurs; *Trimble, P. J.,* absent.

## ON REHEARING.

CAMPBELL, C.—In the motion for rehearing herein, defendant, Yellow Cab Company, says:

"But he (plaintiff) wholly failed to prove that this *excess* above the lawful speed was the thing that *scared* him, and caused him to jump into the Sizemore car. He expressly and in so many words admitted that the *speed* of the cab made no impression upon his mind at all (R. 59.) How in the name of reason could the excessive speed of the cab have 'created apprehension' in his mind when concededly it 'made no impression whatever upon his mind?'"

The deduction that plaintiff expressly admitted the speed of the cab made no impression upon his mind, is based on the following questions and answers:

"Q. As a matter of fact, the speed of that car made no impression on your mind at the time, did it? A. Well, I believe not.

"Q. So that you were not influenced by the speed of the car by what you did; you just saw it and figured you had time to get out of its way and went on your way? That is true, isn't it? A. That is right; 'went on my way.'"

The statements thus made refer to the time when the plaintiff saw the cab sixty to eighty feet from him. Had the cab from that time moved at a lawful rate of speed, as plaintiff had the right to assume it would move, he would have had ample time. to pass over that part of the street presently to be occupied by the cab; but in an instant thereafter plaintiff saw the cab only fifteen or sixteen feet away and moving directly toward him. It came to and occupied that position because it had moved along that busy street at an unlawful and negligent rate of speed. Plaintiff, upon seeing the cab in such dangerous proximity believed, as his act shows he did, that he was in peril, moved quickly out of the path of the onrushing cab, and in doing so came in contact with another car.

The unlawful and negligent operation of the cab is in this court by defendant confessed, but defendant says that negligence was not the proximate cause of the injury. Proximate cause has often been defined by the courts. The definition, approved in State ex rel. v. Cox, 310 Mo. 367, 376, 276 S. W. 869, is typical.

"To constitute proximate cause creating liability for negligence the injury must have been the natural and probable consequence of the negligent act. It is the cause which naturally produces a given result. The negligence must be such that by the usual course of

1180

events it would result in injury unless independent moral agencies intervene in the particular injury."

It is not difficult to state an abstract definition of proximate cause but the application of the rule is often difficult because each case must be decided in the "dry light of its own facts." It ought to be sufficient in this case to say that a jury would be justified in finding that if the cab from the time plaintiff saw it sixty or eighty feet distant had thereafter passed along the street at a lawful rate of speed, plaintiff would not have had occasion to believe he was in peril from it or to have moved quickly from its path, or, to state the record facts another way, a jury would be warranted in finding that if the cab had been operated at a lawful rate of speed, plaintiff would not have been injured. That is, "it is natural and probable" that the driving of a cab at a high rate of speed along a busy street will produce injury. "It is the cause which naturally produces a given result."

It is sufficient "if that negligence contributed as one of the proximate causes of the injury." [McElroy v. Swanson, 213 Mo. App. 160, 166, 247 S. W. 209.]

The facts and the principles of law applicable thereto are stated in the opinion by ARNOLD, J., and to that opinion we adhere.

The judgment is reversed and the cause remanded. The Commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by CAMPBELL, C., is hereby adopted as the opinion of the court. The judgment is reversed and the cause remanded. All concur, except *Trimble, P. J.,* absent.