**Bonnie HOBBS, Appellant,**

v.

**Lloyd Allen RENICK, Appellee.**
**No. 16856.**

United States Court of Appeals
Eighth Circuit.
June 27, 1962.

**858**

Laurence B. Silks, Kansas City, Mo., Louis A. Silks, Jr., and John R. Monaghan, Kansas City, Mo., on the brief, for appellant.

Thomas E. Deacy, Jr., Kansas City, Mo., L. J. Austin and Deacy & Deacy, Kansas City, Mo., on the brief, for appellee.

Before SANBORN, VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

BLACKMUN, Circuit Judge.

About 10 p. m. on Saturday, October 31, 1959, Bonnie Hobbs, while on foot on U. S. Highway 40 west of Odessa, Missouri, was struck by Lloyd A. Renick's automobile. She was seriously injured. She has brought this diversity action against Renick to recover damages. The defendant's motion for a directed verdict, made at the close of the plaintiff's case, was sustained by the trial court on the grounds that the plaintiff was contributorily negligent as a matter of law and that the case was not one for the application of the Missouri humanitarian doctrine. Plaintiff appeals from the resulting judgment.

 Having in mind this court's admonitions that a directed verdict at the close of the plaintiff's evidence should be sparingly used and that on this appeal the plaintiff is entitled to the benefit of every inference which reasonably can be drawn from the evidence viewed in the light most favorable to her, Barnett v. Terminal R. Ass'n of St. Louis, 8 Cir., 1953, 200 F.2d 893, 896, cert. den. 345 U.S. 956, 73 S.Ct. 938, 97 L.Ed. 1377; Lanier v. Great Atlantic & Pacific Tea Corp., 8 Cir., 1953, 205 F.2d 292, 293–294; Stofer v. Montgomery Ward & Co., 8 Cir., 1957, 249 F.2d 285, 291, we briefly set forth the facts of the accident:

That Halloween night was clear but dark. There was no moon. The pavement was dry. The plaintiff and Everett Barker had been in Odessa where they had visited friends and drunk some beer. About 9 p. m. they started west in Barker's car for Kansas City. After traveling a short distance Barker stopped and parked on the north side of U.S. 40. The highway there was a two-lane road running east and west. The Barker car was off the pavement facing west. He left the parking and tail lights on. He announced to the plaintiff that he wanted to return to Odessa and visit some more. The plaintiff objected. The couple argued. Barker worked himself into a violent temper. The plaintiff started to get out of the car. Barker grabbed her arm and slapped her. She scratched his face. Blood was later found in the car. The plaintiff nevertheless got out and went to the south side of the highway to go east back to Odessa and its bus station. Barker emerged from the driver's side of the car. He yelled that he was going to kill the plaintiff. She believed that he meant what he said and she was afraid. He angled across the road and got between her and Odessa.

The plaintiff then turned in the opposite direction and walked on the south shoulder west away from Barker for about 100 feet. No car passed from the west. The plaintiff, however, noticed the lights of a vehicle approaching from the east. This was one driven by Gordon F. Steelman.

Steelman, with his wife, his brother, his brother's wife, the defendant and others, had been at a wiener roast at the McNeese home in Odessa. The evidence was to the effect that Renick had not had anything to drink that evening. The Steelmans, with others in their car, and the defendant following in his car with Mr. and Mrs. McNeese in the front seat with him, were going from Odessa to a square dance in Oak Grove. On the

way McNeese took a bottle out of the glove compartment and had a drink. He offered the bottle to the defendant but Renick refused.

When the plaintiff saw the Steelman car approaching from the east in the north lane she went out from the shoulder into the middle of the south half of the highway. She testified that she first saw the car when it was 400 or 500 feet from her; that as it approached she waved her arms; and that the car slowed down as it drew near but then sped up and went by. The plaintiff then noticed the lights of another approaching westbound vehicle. This was the defendant's car. Plaintiff was still in the south lane. The Renick car was 400 to 600 feet east when she first saw it. She then approached the center line of the highway. She did not take her eyes off that car. She knew that Barker was somewhere behind her on the south shoulder. The plaintiff testified that she "went just across the center line"; that she knew she reached the center line and thought she went a step or two or a foot or two past it; that the Renick automobile was about 100 feet away when she was at her point farthest north across the center line; that the car was going about 65 miles per hour;[1] that she was standing still and facing northeast and the Renick car; that it started to slow down but sped up when it was about 75 feet away; that she turned and ran over to the south half of the road; that Renick was then in his lane and gave no indication he was going to swerve; and that she was able to get as far as the center of the south lane of the highway when she was struck by the automobile's right fender.

There was a hill crest to the east of the accident scene. After the Steelman car had passed the plaintiff, its occupants looked to the rear, saw the lights of the defendant's car some distance behind them appear over the hill, and saw the plaintiff, in the north lane, silhouetted in the lights. The three persons in that car who were called as plaintiff's witnesses said that as the defendant's vehicle began to swerve to its left the plaintiff took two or three steps to the south into the eastbound lane in front of the Renick car.

The defendant's automobile made right wheel skid marks from the center line to the west and south 51 feet to the point of impact; this was 5 feet south of the center line. The pavement there was 24 feet wide. There was testimony that at 60 miles per hour the defendant's car was traveling 88 feet per second; that the reaction time of the average motorist is three-quarters of a second; and that at 60 miles per hour the stopping distance is 251 feet including the 66 feet allowed for reaction time.

The plaintiff suggests and argues (a) that the defendant was negligent in failing to operate his motor vehicle "in a careful and prudent manner" and with "the highest degree of care", as required by V.A.M.S. § 304.010, subd. 1, and in failing to keep a proper lookout; (b) that the plaintiff was not contributorily negligent as a matter of law; (c) that the rescue doctrine is applicable here to overcome any contributory negligence of the plaintiff; (d) that the emergency doctrine is equally applicable and also overcomes any contributory negligence; and (e) that the plaintiff in any event made a case submissible to the jury under the Missouri humanitarian doctrine.

■ We have some doubt whether the facts disclosed by this record would warrant a conclusion that there was any negligence on Renick's part which was a contributing cause of the plaintiff's injuries. We do not decide the case on that issue, however, for we agree with the trial court that the plaintiff was contributorily negligent as a matter of law. In so concluding we have in mind the Missouri standard that it must be

1. The statutory speed limit at that point was 65 miles per hour. V.A.M.S. § 304.010, subd. 2(3), as amended by Laws 1957, p. 631, § 1. No assertion is made that Renick was exceeding the designated limit.

"said from all the evidence and the reasonable inferences therefrom, viewed in the light most favorable to the plaintiff, the only reasonable conclusion is that plaintiff was negligent and that his negligence was a proximate cause of his injury". Kickham v. Carter, Mo.Sup., 1958, 314 S.W.2d 902, 908; Binion v. Armentrout, Mo.Sup., 1960, 333 S.W.2d 87, 91; Arkansas-Missouri Power Co. v. Carl, 8 Cir., 1960, 280 F.2d 7, 10.

■ Plaintiff was, of course, struggling to free herself of Barker who was somewhere behind in the darkness. They had been fighting and she feared him. She wanted help and desired a ride which would take her out of the uncomfortable situation in which she found herself. In seeking rescue, however, she exposed herself to the hazards of traffic traveling at high but permissible speed along what plaintiff knew was a through interstate highway in the country on a dark night. We make no ruling that the plaintiff's being in the middle of the south lane as she attempted to flag Steelman down in the north lane was negligence on her part. But, even recognizing the fact that that tactic had not been effective in stopping the Steelman car, we do hold that her advance over the center line into the north lane for one or two steps or feet when she was aware that the Renick automobile was approaching at 60 or 65 miles per hour; that her remaining there facing that car, with her eyes constantly on it, until it was only 100 feet or less away from her; and that her decision to turn and run back into the south lane when the vehicle had begun to slow down and, necessarily, in her sight had already started its swerve to the left, did constitute negligence on her part which was a contributing factor to the accident as a matter of law. Her testimony that the Renick car was still in the north lane when she started south is not only contrary to that of four of the plaintiff's own witnesses but does not square with the physical facts of the time element and the right wheel skid mark for 51 feet

from the center line south and west to the point of impact.

We regard the following Missouri cases as at least comparable on their facts and as controlling the disposition of this issue: Iman v. Walter Freund Bread Co., 1933, 332 Mo. 461, 58 S.W.2d 477, 479; Redden v. Boehmer, Mo.App., 1949, 223 S.W.2d 127. See also Saindon v. Lucero, 10 Cir., 1951, 187 F.2d 345, cert. den. 342 U.S. 824, 72 S.Ct. 43, 96 L.Ed. 623.

■ This contributory negligence of the plaintiff constitutes a complete defense to any charge of primary negligence of the defendant. Frandeka v. St. Louis Public Service Co., 1950, 361 Mo. 245, 234 S.W.2d 540, 547; Hamilton v. Laclede Electric Cooperative, Mo.Sup., 1956, 294 S.W.2d 11, 15. Plaintiff, therefore, cannot recover unless the facts are such as to make applicable one of the Missouri exceptions to the contributory negligence barrier.

■ Plaintiff first seeks to overcome the effect of what would be contributory negligence on her part by application of the so-called rescue doctrine. In 38 Am.Jur., Negligence, § 228, this is described as follows:

"The rule is well settled that one who sees a person in imminent and serious peril caused by the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own life or serious injury in attempting to effect a rescue, provided the attempt is not recklessly or rashly made. In other words, in attempting to save the life of another, one is justified in exposing himself to danger in a manner that under other circumstances would deprive him of legal redress for injuries sustained." (Footnotes omitted.)

See also 65 C.J.S. Negligence § 124; Restatement of the Law of Torts, § 472. The doctrine is recognized in Missouri. Hammonds v. Haven, Mo.Sup., 1955, 280 S.W.2d 814, 816; Dulley v. Berkley, Mo. Sup., 1957, 304 S.W.2d 878, 883; Doran

v. Kansas City, 1951, 241 Mo.App. 156, 237 S.W.2d 907, 912–913. These authorities illustrate, however, that an essential fact for the application of the doctrine is, as its very name implies, the attempted rescue of a third person, not the plaintiff, who is in the position of peril. We know of no case, and none has been cited to us, where the rescue doctrine has been applied to absolve a plaintiff's contributory negligence when it is the plaintiff himself, and not a third person, who is in the perilous posture. We would hesitate to extend the doctrine to such a situation as a matter of first impression Missouri law. The rescue doctrine thus is of no assistance to this plaintiff.

■ Plaintiff next seeks to overcome the effect of what would ordinarily be contributory negligence on her part by invoking the emergency doctrine. This is the principle, recognized by the Missouri courts, that, where an emergency exists requiring sudden action without time to deliberate, one is not to be held to the same strict accountability, as to his actions from a negligence standpoint, which is required when one is not dominated by terror of impending danger. Kleiber v. People's Ry. Co., 1891, 107 Mo. 240, 17 S.W. 946, 947, 14 L.R.A. 613; Doyel v. Thompson, 1948, 357 Mo. 963, 211 S.W.2d 704, 708–709; Menard v. Goltra, 1931, 328 Mo. 368, 40 S.W.2d 1053, 1060; Clark v. Atchison & Eastern Bridge Co., 1929, 324 Mo. 544, 24 S.W.2d 143, 152. See Gulf, M. & O. R. R. v. Williamson, 8 Cir., 1951, 191 F.2d 887, 893. Ordinary care of the plaintiff is required but it is only the care which a reasonably prudent man would have exercised under those circumstances and not the care such a man would have exercised under ordinary circumstances.

■ Irrespective of whether the doctrine might have conceivable application for the plaintiff's benefit to create a jury issue as to her decision to move back south when Renick was within 100 feet of her, we think the emergency doctrine is of no assistance to the plaintiff because her emergency was created at least in part by her own *prior* negligence in getting into the north lane of traffic when she knew the Renick automobile was fast approaching from the east. In Rohde v. St. Louis Public Service Co., 1952, 249 S.W.2d 417, 420, the Supreme Court of Missouri said:

> " * * * An integral part of the doctrine, in the sense that it is prerequisite to its application, is that the emergency shall not have been caused or contributed to by the tortious conduct of the one asserting the emergency as a factor to be considered in determining the reasonable character of the action in question. The emergency doctrine has *no* application and may not be asserted if the emergency arises wholly or partially from the negligence of the one who seeks to invoke the doctrine."

Although these quoted words were uttered in a case where a defendant rather than a plaintiff, invoked the doctrine, the requirement of absence of prior negligence is equally applicable to a plaintiff claiming the benefit of the doctrine. Moore v. East St. Louis & Suburban Ry., Mo.App., 1932, 54 S.W.2d 767, 770–771; Johnston v. Owings, Mo.App., 1952, 254 S.W.2d 993, 997; McCloskey v. Renne, 1931, 225 Mo.App. 810, 37 S.W.2d 950, 954; Hall v. St. Louis-San Francisco Ry., Mo.Sup., 1922, 240 S.W. 175, 177. Furthermore, there are expressions in the Missouri decisions that the peril or the plaintiff's appropriate apprehension must be caused by the negligence of the defendant. Stanley v. Helm, 1920, 204 Mo.App. 159, 223 S.W. 125, 127; Phillips v. Yellow Cab Co., 1931, 225 Mo.App. 1172, 36 S.W.2d 419, 421; Carter v. Wells, Mo.App., 1931, 40 S.W.2d 725, 726; Lee v. City Ice Co., Mo.App., 1933, 64 S.W.2d 736, 738. We need only point out that the plaintiff's position of danger was occasioned by Barker and that it was fear of him which caused her to venture into the highway in the first place and ultimately into Renick's lane. Renick was in no way responsible for that. The cases cited might perhaps sup-

port the application of the emergency doctrine in a suit by the plaintiff against Barker even though the plaintiff's injuries were the result of contact with an instrumentality not in the hands of Barker. They do not, however, support the doctrine's use here against Renick.

Plaintiff lastly seeks to overcome the effect of what would ordinarily be held to be her contributory negligence by invoking the humanitarian doctrine.

The record may well create a question whether the plaintiff during the trial did not forego the submission of her case on the humanitarian doctrine and elect, instead, to rest it on primary negligence. We are not convinced, however, that such an election was made. We hold, in any event, that the facts do not justify the submission of the case to the jury under this Missouri rule.

■■■ The humanitarian doctrine is an exception in Missouri to the law of contributory negligence. Teague v. Plaza Express Co., 1945, 354 Mo. 582, 190 S.W.2d 254, 258; Sheerin v. St. Louis Public Service Co., Mo.Sup., 1957, 300 S.W.2d 483, 488; Wabash R. R. v. Johnson, 8 Cir., 1954, 211 F.2d 664, 666; Kansas City Public Service Co. v. Taylor, 8 Cir., 1954, 210 F.2d 3, 5. It has been characterized, too, as something more than such an exception. In Banks v. Morris & Co., 1924, 302 Mo. 254, 257 S. W. 482, 484, the court said:

"It 'proceeds upon the precepts of humanity and of natural justice to the end that every person shall exercise ordinary care for the preservation of another after seeing him in peril or about to become imperiled, when such injury may be averted without injury to others.' Dey v. [United] Railways, [Co. of St. Louis] 140 Mo.App. 461, 467, 120 S.W. 134, 136."

■■■ But not every state of facts resulting in injuries from moving objects gives rise to a cause of action under the humanitarian doctrine. Smith v. Siedhoff, Mo.Sup., 1948, 209 S.W. 233, 236; Yarrington v. Lininger, Mo.Sup.,

1959, 327 S.W.2d 104, 111. Necessary for the application of the doctrine are (a) plaintiff's position of imminent peril; (b) defendant's actual or constructive notice of that peril; (c) defendant's "present ability, with the means at hand, to have averted the impending injury without injury to himself or others"; (d) defendant's failure to exercise the required degree of care; and (e) a resulting injury to the plaintiff. Banks v. Morris & Co., supra, p. 484 of 257 S. W.; Graham v. Consolidated Forwarding Co., Mo.Sup., 1949, 221 S.W.2d 733, 735; Davis v. Quality Oil Co., Mo.Sup., 1962, 353 S.W.2d 670, 673–674; Noland v. Pastor, 8 Cir., 1951, 191 F.2d 1009, 1012; Rudloff v. Johnson, 8 Cir., 1959, 267 F.2d 708, 713. We emphasize that among these requisites are, first, that the defendant's duty to act does not arise until the plaintiff comes into the position of imminent peril, Davis v. Quality Oil Co., supra, pp. 673–674 of 353 S.W. 2d, and, second, that the defendant must have the present ability, after notice of the peril, to avert the injury to the plaintiff without harm to himself or others. Davis v. Quality Oil Co., supra, p. 674 of 353 S.W.2d; Yarrington v. Lininger, supra, p. 108 of 327 S.W.2d; Illinois Terminal R. R. v. Creek, 8 Cir., 1953, 207 F. 2d 475, 476, 481. When that ability is not present the humanitarian doctrine has no application. Shirley v. Norfleet, Mo.Sup., 1958, 315 S.W.2d 715, 723; Davis v. Quality Oil Co., supra, p. 675 of 353 S.W.2d; Allen v. Kessler, Mo.Sup., 1933, 64 S.W.2d 630, 632.

Although cases always differ somewhat on their facts, we feel that the very recent Davis case which we have just cited several times is controlling on the humanitarian issue here. There the decedent, driving west on a highway business route, sought to enter and go east on a bypass highway intersecting from his right at about a 45° angle. He made a fast clockwise turn in a sweeping circle which took him far into the lane for westbound traffic on the bypass and ultimately into his desired eastbound lane. His automobile was struck by a truck

approaching the intersection in the westbound lane of the bypass but which, in an effort to miss the decedent's car, immediately prior to the collision swerved sharply into the eastbound lane. The Supreme Court of Missouri observed that it was evident that after the car returned to the eastbound lane of the bypass it was out of the path the truck would have followed had it not swerved. The court said, pp. 674–675 of 353 S.W.2d:

> " * * * Leroy drove into *and then out* of the westbound lane of the bypass *before* the truck would have arrived even though Earlin Friend did nothing to stop or to slacken its speed. In this event he was not in a position of imminent peril within the meaning of the humanitarian rule either while approaching or while actually in the then intended path of the truck because Leroy was moving in a direction and at a speed which would remove him from that path of the moving vehicle before injury from it could befall him. The peril, if any, to Leroy arising from that situation was not certain, immediate and impending. It was contingent. * * In this case, before injury could befall Leroy, the direction of travel of the truck had to be changed, that is, Earlin Friend had to swerve sharply into the eastbound lane."

The court then noted that, even assuming the decedent to be in a position of imminent peril when he was in the westbound lane, the evidence nevertheless, inasmuch as the collision took place in the eastbound lane, established as a matter of law that the failure of the truck to stop or slacken its speed could not have been the proximate cause of the collision. It went on to say, p. 675 of 353 S.W.2d:

> "It may be that Earlin Friend was negligent in swerving to his left into the eastbound lane of the bypass so as to strike Leroy's automobile, but if so that was primary negligence, not humanitarian negligence. It is also evident that *after* Earlin Friend swerved his truck so that Leroy's automobile was then in the path of the truck in this new course of travel then Leroy was in imminent peril. But, the evidence discloses no possible action that Earlin Friend could have taken *thereafter* with the means at hand to avert the then pending collision."

This reasoning applies precisely to our present case. The plaintiff entered and then went out of Renick's lane before Renick would have reached the spot she had occupied in the north lane. She therefore "was not in a position of imminent peril" there "within the meaning of the humanitarian rule". Before "injury could befall" her, Renick's "direction of travel * * * had to be changed". If, however, one were to assume that she was in a position of imminent peril in the north lane, the evidence shows as a matter of law that Renick's failure to stop or further slacken his speed was not the proximate cause of the accident. If Renick was "negligent in swerving * * * that was primary negligence, not humanitarian negligence". After Renick swerved the plaintiff was or placed herself in imminent peril but Renick then could have taken no possible action with the means at hand to avert the impending accident.

The Davis case convinces us that the Missouri Supreme Court would hold, if the present case were before it, that the humanitarian doctrine is not applicable. We are constrained to follow. Compare Martin v. Effrein, 1949, 359 Mo. 1150, 225 S.W.2d 775. At the least, the Davis case demonstrates that the trial court's conclusion as to the Missouri law on the humanitarian issue, was a permissible one which this court will not disturb. Homolla v. Gluck, 8 Cir., 1957, 248 F.2d 731, 733–734. Our own case of Herron v. Wilson, 8 Cir., 1950, 186 F.2d 72, suggested by the plaintiff, is distinguishable on its facts.

Concluding, as we do, that the plaintiff, as the trial court held, was contributorily negligent as a matter of law and that

none of the three suggested exceptions to the contributory negligence barrier has application here, the trial court's direction of a verdict was proper.

Affirmed.