Alvie L. BENNETT, Appellant-Respondent,

v.

Theodore M. KITCHIN, Appellant,

and

James E. Reum, Respondent.

No. 50900.

Supreme Court of Missouri,
Division No. 2.

Feb. 14, 1966.

Motion for Rehearing or for Transfer
to Court En Banc Denied
March 14, 1966.

John C. Milholland, A. J. Anderson, Harrisonville, for appellant Alvie L. Bennett.

Al Lebrecht, Albert Thomson, Kansas City, for appellant Kitchin, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, of counsel.

Morrison, Hecker, Cozad & Morrison, Karl F. Schmidt, Byron J. Beck, Kansas City, for respondent, James E. Reum.

FINCH, Judge.

This personal injury case arose from a two-automobile collision, followed shortly thereafter by the collision of a third automobile with the damaged automobiles and the person of plaintiff, who then was out of his car, standing on the pavement. The two cars involved in the first collision were driven by plaintiff and defendant Kitchin. The third automobile was driven by defendant Reum. The jury returned a verdict for $90,000 in favor of plaintiff and against defendant Kitchin, but found in favor of defendant Reum. Plaintiff appealed from the judgment in favor of Reum, and defendant Kitchin appealed from the $90,000 judgment. The appeals have been consolidated.

The collisions occurred at approximately 10:30 p. m., on April 5, 1963, on Highway M–150 near its intersection with a single track railroad grade crossing and near where Prospect Avenue would intersect M–150 if it were cut through. M–150 at that point runs east and west along the north side of Richards-Gebaur Air Force Base. The pavement was of gravel imbedded asphalt construction with a lane for eastbound traffic and one for westbound traffic, separated by a painted divider strip. Each shoulder was wide enough to permit passage thereon of an automobile driving off of the pavement. The roadway at the scene of the collisions is approximately level and continues to be level to the east to the railroad tracks, a distance of 160 feet, and on to the east of the railroad tracks approximately eight feet, at which point it begins to slope downhill to the east.

Plaintiff was traveling east on M–150 in a 1955 Buick at from 30 to 40 miles per hour. His mother and his wife occupied the front seat with him, and his sister and her husband were in the rear seat. According to evidence on behalf of plaintiff, a westbound Plymouth driven by defendant Kitchin swerved left into the eastbound lane when 50 to 60 feet away from the plaintiff's car. Plaintiff then swerved to the left and applied his brakes and was almost stopped when the right front of Kitchin's car struck the right rear of the plaintiff's Buick. Defendant Kitchin testified that it was plaintiff who first turned left when five or six car lengths away and that he (Kitchin) then turned to his left to try to avoid plaintiff. Both vehicles stopped at the approximate point of impact. The Buick was straddling the center line with the right rear fender still south of the center line and the remainder of the car to the north, headed in a northeasterly direction. The Plymouth was

headed southwest. It was about one-half south of the center line and one-half north thereof. The cars were almost parallel, with the Plymouth to the east of the Buick. According to plaintiff and others in his car, the front headlights on the Buick were left shining after the accident and the dome light of the Buick was turned on and left on. The lights on the Plymouth were not burning after the collision.

Plaintiff and other occupants of his car who testified stated that immediately after the first collision, plaintiff's sister began to scream and carry on. Plaintiff turned on the dome light of his car and checked her. He also could see Kitchin slumped over the steering wheel of his Plymouth, so he got out of the Buick and went around to the driver's seat of the Plymouth and helped Kitchin out of the car. Plaintiff could see that Kitchin apparently was not hurt, but did ascertain that he was drunk. (Evidence was received that Kitchin had been drinking earlier in the evening and that he voluntarily took a breatholizer test at 12:53 a. m., over two hours after the collision, and it disclosed blood alcohol of .19 per cent.) Plaintiff then left Kitchin standing there and started back around the back of the Plymouth to go to the Buick and check further on the occupants of his own car. As he was going around the Plymouth, plaintiff heard its motor start up and the Plymouth started to back up. Plaintiff jumped out of the way and called to Kitchin, who was back in the driver's seat, to ask what he was doing. Kitchin replied that he was going to "get the hell out of there before the police got there." Plaintiff then reached in the driver's window and turned off the ignition of the Plymouth. He remembered nothing after that. Plaintiff was corroborated in this version by other occupants of his car, but defendant Kitchin testified that plaintiff pulled him out of the Plymouth, took off his glasses, and punched him in the nose. He said he could not remember much about what happened after that. He thought he had walked over to the side of the road, but said he could have gotten back in his car.

He said he did not try to drive away. Immediately, then, the second crash came. Kitchin testified that he did not know where plaintiff Bennett was at the time of the second collision.

While plaintiff was at the driver's door of the Plymouth turning off the ignition, a westbound Chevrolet driven by defendant Reum hit plaintiff and the parked Plymouth (causing it, in turn, to hit the Buick). Plaintiff at the time was in about the middle of the eastbound lane. He was pinned between the front of the Chevrolet and the left side of the Plymouth. He suffered very severe injuries, the extent of which is not in issue on this appeal.

Plaintiff and the occupants of his car fixed the elapsed time between the first and second collisions at from one and one-half to two and one-half minutes.

Defendant Reum was a soldier on duty at the Richards-Gebaur Air Force Base. He had driven from the Air Force Base onto M-150 and was driving west. Reum came up the grade toward the intersecting railroad tracks traveling, he thought, at somewhere between 40 and 50 miles per hour. He testified that as he approached the railroad he met four cars, the lights of which blinded him to a certain extent. He denied seeing lights on either the wrecked Buick or Plymouth, and testified that just when he was astraddle the intersecting railroad tracks his lights first picked up a reflection from the rear end of a dark automobile in the westbound lane. He saw no car coming from the west and he stated that when he saw the car in the westbound lane he immediately applied his brakes to slow his car and swerved it to the left to try to go around. He did not see the other car nor did he see plaintiff until he had turned left, at which time he did not know how far away he was. He applied his brakes in an emergency fashion and tried to swerve further to the left but could not do so. He did not sound his horn. He testified that when he first saw plaintiff he appeared to be reaching inside the left front door of the Plymouth but then straightened up, looked

around and put his hands on top of the Plymouth.

There was some testimony, based on skid marks, indicating a greater speed by Reum than that which he estimated. There also was other testimony which we need not detail for purposes of this appeal except as specific reference thereto may be made subsequently in this opinion as needed.

Plaintiff's petition alleged negligence against the defendant Kitchin in the operation of his vehicle leading to the first collision, and also alleged negligence on the part of Kitchin in driving his car while intoxicated and in attempting to drive his automobile from the scene of the collision without identifying himself to plaintiff or the passengers in the Buick, although there had been injury and damage in connection with that collision.

On appeal, defendant Kitchin seeks to raise four questions as a basis for either reversal or remand for new trial.

■ First, Kitchin claims that plaintiff was guilty of contributory negligence as a matter of law. The point is stated in an abstract fashion without giving any reasons why the plaintiff was guilty of contributory negligence. This is not in conformity with our Rule 83.05(e) [1] and preserves nothing for appellate review. Emert v. St. Louis Public Service Co., Mo., 370 S.W.2d 366, 374, and Domijan v. Harp, Mo., 340 S.W. 2d 728, 731. However, the same question is raised sufficiently in defendant Reum's brief and we proceed to consider the question.

In examining this question we must keep in mind, as stated in Kickham v. Carter, Mo., 314 S.W.2d 902, 908, " * * * that plaintiff's negligence is a jury question, unless it may be said from all the evidence and the reasonable inferences therefrom, viewed in the light most favorable to plaintiff, the only reasonable conclusion is that plaintiff was negligent and that his negli-

gence was a proximate cause of his injury."

The evidence (and reasonable inferences therefrom) most favorable to plaintiff was as follows: After the collision of the first two cars plaintiff's sister was screaming, and plaintiff also could see that Kitchin, the driver of the other car, was slumped over his steering wheel. Plaintiff turned on the dome light of his car to check his sister. He then got out of his car and went around to the driver's side of the Kitchin car to check on Kitchin. Plaintiff helped him out and to his feet and ascertained his apparent condition. He then started back to check further on his wife and sister, got around back of Kitchin's automobile and then jumped to get out of the way when the latter car was started and began to back up. Kitchin stated he was going to leave before the police got there, and plaintiff then reached in and turned off his ignition to keep him from leaving, following which he was hit by the Reum car. All of this activity in checking on the condition of people apparently injured in the wreck covered a span of only one and one-half to two and one-half minutes. The highway was level from the place the cars were wrecked to a point at least eight feet east of the railroad tracks. The Buick headlights were on and were pointed to the northeast, giving notice of the presence of the car to traffic approaching from the east. The evidence indicated that on a line of sight basis, it was possible to see the wrecked cars from a point at least 50 feet east of the railroad and perhaps a point as far as 122 feet east of the railroad. While headlights on a car approaching from the east would shine uphill as the car approached the railroad tracks, this would not prevent the driver from seeing the Buick headlights. Defendant Reum himself testified that he did not know why he did not see the wrecked cars when he was east of the railroad tracks and as he came up to the tracks. In addition, he testified that the lights on his car were in good condition. He stated that they

---

I. All references to Rules are to Vernon's Annotated Missouri Rules.

were on low beam, which causes the lights to shine down at the road and to the right more than when on high beam, but still it might be inferred that those lights would have permitted him to see the wrecked cars occupying both lanes and that he had room to pass on the north shoulder without hitting either plaintiff or the wrecked cars. As a matter of fact, this is where cars did pass subsequent to the second collision. Westbound traffic reasonably could have been expected to be on the north side of the road, and plaintiff, at the time he was hit, was in the middle of the south lane which was for eastbound traffic.

■ We are of the opinion that the evidence, viewed most favorably to plaintiff, did not show him to be guilty of contributory negligence as a matter of law. Defendant Reum in his brief states that "under the law of Missouri a plaintiff who is injured by reason of *voluntarily* and *unnecessarily* placing himself in a dangerous situation, fully knowing and realizing the danger and the hazard to which he is exposing himself, is guilty of contributory negligence as a *matter of law*." Numerous Missouri cases are cited, but we consider them to be distinguishable on the facts. For example, in Dempsey v. Horton, Mo., 337 Mo. 379, 84 S.W.2d 621, plaintiff's car had a broken axle and was parked with a part of the left side of the car on the pavement and the balance on the dirt shoulder. Plaintiff stood at the left rear fender for about five minutes waiting for his son to bring a jack. This court said 84 S.W.2d l. c. 626: "In the instant case plaintiff voluntarily stood on a paved public highway, where he had reason to anticipate automobile traffic, for several minutes without taking the precaution to look for the approach of that traffic from which danger was to be expected. This, without any particular purpose for so doing." Plaintiff there was held to have been guilty of contributory negligence as a matter of law. In contrast, plaintiff here was confronted with a collision in which people in both cars appeared to be hurt. He left

on his lights, turned on the dome light, and for one and one-half to two and one-half minutes he busied himself with checking on the people who appeared to have been injured. This is unlike plaintiff in the Dempsey case, who had no reason for just standing there. In addition, Dempsey was in the lane in which defendant's car approached him from the rear, whereas plaintiff in this case was in the south or eastbound lane and was hit by a westbound car which swerved over into the eastbound lane. Smith v. Ozark Water Mills Co., 215 Mo.App. 129, 238 S.W. 573, another case cited, involved the question of whether one who rode on the running board of the car was guilty of contributory negligence. State ex rel. Schaffer v. Allen, Mo., 253 S.W. 768, involved a man who was on a sidewalk on the side of a bridge and stepped through a trestle onto the vehicular roadway where his view of approaching vehicles was obscured by smoke. White v. Barkovitz, Mo.App., 254 S.W.2d 291, involved a man who sat down on the curb in front of a parked car and went to sleep with his feet in the street where the automobile necessarily would strike him when it started up. Hobbs v. Renick, C.C.A. 8, 304 F.2d 856, involved a woman who was trying, at night, to flag down automobiles and obtain a ride. She stood in the south lane (for eastbound traffic) and tried to stop a car which was westbound in the north lane, but when it did not stop and a second car came, she went on into the north lane and remained there until the westbound car was about 100 feet away going 65 miles per hour, at which time she turned and ran back to the south half of the highway onto which the car had swerved in an attempt to go around her. The court held that she was contributorily negligent as a matter of law, but went on to say l.c. 860: "We make no ruling that the plaintiff's being in the middle of the south lane as she attempted to flag Steelman down in the north lane was negligence on her part." The difference in factual situations from the cited cases and the case at bar seems obvious. The instant case simply does not

fall within the doctrine announced in those cases. Plaintiff herein did not voluntarily or unnecessarily place himself in a dangerous situation, and in our judgment he was not guilty of contributory negligence as a matter of law. We find nothing in the other cases cited in the briefs which causes us to reach a contrary conclusion. We hold that the issue of contributory negligence on the part of plaintiff Bennett was for the jury.

██ Defendant Kitchin's second point is that "the lower court erred in failing to enter judgment for defendant Kitchin since the plaintiff did not plead or prove a cause of action against defendant Kitchin based upon the second collision." This assignment also is abstract and is not sufficient to state in what particulars the pleading and proof are claimed to be deficient. An examination of the argument which follows discloses that the point now being asserted is that plaintiff seeks recovery on the theory that a civil cause of action is not created by § 564.450 [2] and that plaintiff seeks recovery on the hypothesis that such a civil cause of action does exist. Defendant Kitchin cites authorities such as Bailey v. Canadian Shield General Insurance Co., Mo., 380 S.W.2d 378, to support the proposition that a criminal statute, imposing penalties for violation thereof, creates no civil liability in the absence of something to show legislative intent to create such liability. The difficulty with Kitchin's position is that this is a point not presented in the trial court but now raised for the first time on appeal. A careful examination of Kitchin's motion for new trial so discloses. It is elementary that we will not consider matters raised for the first time on appeal and will not convict the trial court of error on something on which it was not accorded an opportunity to rule. Actually, we also should point out that plaintiff claims that defendant misconceives what was done and that the case was not submitted on the theory that violation of § 564.450 was negligence per se. Rather, he submitted the violation of the provisions of these two statutes (§§ 564.440 and 564.450) as conjunctive parts of one course of conduct which the jury could find to be negligent and for which recovery could be permitted if the jury found that such negligence caused or contributed to cause plaintiff to be struck and injured by defendant Reum. We do not attempt to resolve this difference or pass on the question. Defendant Kitchin's point number two presents nothing for us to review.

██ The third point raised by defendant Kitchin is that a mistrial should have been declared for alleged "misconduct at the trial of plaintiff and his wife in showing the claimed forlorn condition of plaintiff and his wife." The incident to which defendant refers occurred when plaintiff's wife was being questioned on direct examination and was as follows:

"Q. How frequently did you visit your husband in Research Hospital? A. Well, the first month I would say that I was there every day some time or other during the day. I had to go to work to take care of the boys and myself and then whenever I got a day off—

"MR. SCHMIDT: I object to that as not responsive to the question.

"MR. BENNETT: She had to go to work to feed her kids.

"MR. SCHMIDT: (Out of the hearing of the jury.) Now at this time on behalf of Defendant Reum we move for a mistrial and ask that this jury be discharged on the grounds that Mr. Bennett within the hearing of this jury has just said that she had to go to work to feed her kids; that is highly prejudicial and we move that the jury be discharged.

"MR. HENRY: Same motion on behalf of Defendant Kitchin.

"MR. MILHOLLAND: I don't think this is prejudicial—this man had that responsibility—

---

**2.** All references to statutes are to RSMo 1959 and V.A.M.S., unless otherwise indicated.

"MR. SCHMIDT: This answer was not responsive to the question, whether or not she went to work was not responsive and the remark is highly prejudicial, he was not on the witness stand and was sitting at the counsel table and there was no call for this remark and I ask that the jury be discharged, Your Honor.

"MR. HENRY: Same motion on behalf of Defendant Kitchin.

"THE COURT: At this time both defendants' motions to discharge the jury will be overruled. I am going to instruct the jury to disregard the statement made by plaintiff.

"MR. MILHOLLAND: If the Court please. I would like to have a recess. I want to instruct my client. I want to avoid anything like this.

"(Whereupon a recess was called by the Court after which came the following:)

"THE COURT: Members of the jury: At this time I am going to instruct you to completely disregard the statement made by the plaintiff in this case. It should have no part in your deliberations in considering the merits of this case.

"MR. MILHOLLAND: Let the record show that plaintiff withdraws the last answer of the witness on the stand.

"THE COURT: Very well."

Kitchin's motion for new trial raised no question with respect to the answer given by plaintiff's wife. The motion for new trial did assert error in the spontaneous statement by plaintiff which is set out above. The trial court instructed the jury to disregard the statement but declined to discharge the jury. We cannot say that this was an abuse of discretion. Furthermore, no prejudice therefrom is shown. The statement obviously had no bearing on the issue of liability. It was defendant Reum's attorney who made the objection which prompted the spontaneous remark by plaintiff, but the jury found in favor of the defendant Reum. The

effect of the remark, if any, would be on the amount of the verdict, but defendant Kitchin, on this appeal, makes no complaint that the verdict is excessive or the result of passion or prejudice. He asks for no remittitur. Accordingly, there is no showing that he was prejudiced by the remark, and this contention is overruled.

■ Finally, defendant Kitchin complains because Instruction No. 1 "is erroneous as a matter of law and comments on the evidence". This assignment wholly fails to comply with Rule 83.05(e) and presents nothing for review. Haley v. Edwards, Mo., 276 S.W.2d 153, 162; Wilcox v. Swenson, Mo., 324 S.W.2d 664; Anderson v. Welty, Mo.App., 334 S.W.2d 132, 139.

Plaintiff's petition alleged both primary and humanitarian negligence against defendant Reum. The case was submitted to the jury on alleged primary negligence of excessive speed in excess of 45 miles per hour, and turning his automobile across the center line into the eastbound lane. It was submitted under the humanitarian doctrine for failure to warn.

On appeal, plaintiff complains of two instructions given by Reum, viz., Nos. 15 and 16. No. 15 was a sudden emergency instruction given in connection with the primary negligence submission, and No. 16 was a converse humanitarian instruction.

Instruction No. 15 was as follows:

"The Court instructs the jury that if you find and believe from the evidence that at the time and place referred to in the evidence, defendant James E. Reum was driving and operating his automobile westwardly over Highway #150 in Jackson County, Missouri, and was at all times referred to in the evidence exercising the highest degree of care in the operation of said automobile, and if you find and believe from the evidence that when said automobile reached a point where railroad tracks cross Highway 150 at approximately Highway 150 and Prospect, the westbound lane and part of the eastbound lane of said highway

at a point approximately 160 feet to the west of said railroad tracks were blocked by an automobile operated by defendant Kitchin and an automobile operated by plaintiff Bennett, which had collided on said highway, creating a hazard to westbound vehicles, if so, and if you find that defendant was thereby confronted with a sudden emergency, with no time to deliberate, if you so find, and that no act of defendant Reum contributed to cause said emergency, if so, then the Court instructs you that defendant James Reum was only required to exercise that degree of care that a very careful and prudent person would exercise under the same or similar circumstances, and if you find he did exercise such degree of care in turning his automobile to the left of the center of Highway #150 and applying his brakes, under the circumstances aforesaid, in order to avoid striking the aformentioned automobiles and plaintiff, if you so find the facts to be, and if you further find and believe from the evidence that as a result of defendant James Reum applying his brakes, he locked the wheels of his automobile and was thereafter unable to turn it to the left or right, and if you find that after defendant James Reum locked the wheels of his automobile, the same was caused to collide with plaintiff, who was then standing on the paved portion of Highway #150 immediately to the east of the vehicle operated by defendant Kitchin, if you so find, and that defendant James Reum did not collide with plaintiff as a result of negligence which is submitted to you in Instruction No. 2, then you are instructed that plaintiff herein is not entitled to recover from defendant James E. Reum, unless you find for plaintiff under Instruction No. 3."

■■ Plaintiff first says that a sudden emergency instruction should not be given in any humanitarian submission case. If this were a case submitted only on the humanitarian doctrine, as in Teague v. Plaza Express Co., 354 Mo. 582, 190 S.W. 2d 254, this contention would be correct,

for the sudden emergency doctrine has no application to a humanitarian submission. Plaintiff cites and relies upon the case of Green v. Guynes, 361 Mo. 606, 235 S.W.2d 298, which he says involved both primary and humanitarian submissions. It does hold that the refusal by the trial court to give a sudden emergency instruction was not error, and contains some general language, based on Teague v. Plaza Express Co., supra, that a sudden emergency instruction should not be given in a humanitarian case. An examination of the record in that case discloses that the instruction which was tendered was not limited specifically to the primary negligence submission, but was general in its language and could be applied by the jury to the humanitarian submission as well as that based on primary negligence. It clearly was erroneous and was properly refused, and the language in the opinion must be viewed in the light of the instruction involved. In contrast, it will be observed that Instruction No. 15, of which plaintiff complains, specifically limited its application to Instruction No. 2, which was the primary negligence submission against defendant Reum. It told the jury that under such circumstances plaintiff could not recover "unless you find for plaintiff under Instruction No. 3," which was the humanitarian submission. This was proper. The case of Olsten v. Susman, Mo., 391 S.W.2d 331, dealt with a case wherein plaintiff submitted on both primary and humanitarian negligence and defendant submitted an instruction on contributory negligence. On appeal, plaintiff contended that this wrongfully injected primary negligence into plaintiff's humanitarian rule submission. In discussing this question the court said, l.c. 333: "By submitting both humanitarian and primary negligence in a case plaintiff cannot deprive defendant of the defense of contributory negligence as to the primary submission. Therefore, the determinative question in this case is whether Instruction No. 3 was worded so as to cause a jury of reasonable intelligence and understanding to believe that the contributory negligence

therein submitted could constitute a defense to the humanitarian negligence submitted by Instruction No. 5." The court held that the contributory negligence instruction was so worded that the jury would limit it to the primary negligence submission and was properly given. The reasoning in that case is applicable here. At the time this case was tried a defendant was entitled to give a proper sudden emergency instruction in response to a primary negligence submission if the evidence justified it. He could not be deprived of that right by the action of plaintiff in submitting on humanitarian as well as primary negligence so long as the tendered sudden emergency instruction clearly limited its application to the primary negligence submission and excepted the humanitarian submission. Instruction No. 15 did that. Plaintiff's first objection to the instruction is overruled.

Plaintiff's second attack on Instruction No. 15 is that the evidence most favorable to Reum failed to show that the hypothesized sudden emergency arose without fault on the part of Reum. This contention is based on the premise that under the evidence Reum was guilty of negligence as a matter of law in exceeding the speed limit, that such negligence constituted the only moving element of the emergency since the wrecked vehicles and plaintiff were motionless and that the emergency did not arise without fault on the part of the defendant Reum.

■■■■ This contention of plaintiff necessitates some additional examination of the pleadings and evidence. It is plaintiff's contention that the collision occurred within the city limits of Kansas City, that the speed limit of 45 miles per hour provided by § 304.010 was applicable, and that defendant Reum's own testimony established as a matter of law that he was exceeding that speed limit. The record does not substantiate some of these premises, as we shall demonstrate. In paragraph 1 of plaintiff's first amended petition it was alleged that plaintiff was driving on a "public highway and thoroughfare, Missouri High-

way No. 150 at or near a point where said highway would be intersected by an extension of Prospect Avenue, a public street in Kansas City, Missouri." This allegation was admitted in Reum's answer, and plaintiff contends that this established that the point where the accident occurred was in Kansas City. We do not so interpret it. The only reference in that allegation to Kansas City is that Prospect Avenue is a street in Kansas City. That is not equivalent to saying that an extension thereof to a point where it would intersect Highway No. 150 would also be in Kansas City. Plaintiff also would have us take judicial notice of the boundaries of Kansas City and in that manner establish that this was within the city limits. We do not take judicial notice of whether streets are within the boundaries of cities. Woodson v. Metropolitan St. Ry. Co., 224 Mo. 685, 123 S.W. 820, 30 L.R.A.,N.S., 931; McIlvain v. Kavorinos, 361 Mo. 749, 236 S.W.2d 322. It would not avail plaintiff of anything in this case if we did because § 304.010(3) provides that "In any city, town or village where the speed limit is not set by local authority, no vehicle shall be operated at a speed in excess of forty-five miles per hour." Plaintiff offered no proof as to whether Kansas City has set a speed limit for this area, assuming it is within the city limits, and plaintiff would have the obligation so to do if he would avail himself of the speed limit specified in § 304.010(3). Finally, in this connection, the evidence as to Reum's speed would have been for the jury and did not conclusively establish that he was exceeding 45 miles per hour. Reum testified with respect to his speed, "I don't think it would have been over 40 or 50; I am pretty sure it was about 45 miles per hour," and he also said, on cross-examination, that he could have been going faster than 45 and "I am not going to say I wasn't." This would not amount to an admission that he was going in excess of 45 miles per hour, so as to make him guilty of negligence per se, but rather it made the matter a jury question. Accordingly, this contention of plaintiff with respect to Instruction No. 15 is overruled.

Plaintiff's next attack on Instruction No. 15 is two-fold. First, he claims it ignored discoverable danger and hypothesized instead the time and place where Reum saw the danger (where the railroad tracks crossed Highway No. 150), thereby conflicting with Instruction No. 3 which submitted to the jury the question of when Reum saw or in the exercise of the highest degree of care could have seen plaintiff in a position of imminent peril. Secondly, plaintiff says that the instruction failed to hypothesize Reum's speed or any fact regarding his ability to have discovered the danger, thereby giving the jury a roving commission. These contentions will be considered together.

Instruction No. 15 related solely to the submission by plaintiff of primary negligence under Instruction No. 2. On examination, we find that in Instruction No. 2 plaintiff used this language: "* * * and if you further find that at said place and time defendant Reum drove his Chevrolet automobile in a westerly direction across the *railroad tracks on said Highway 150* at a speed in excess of 45 miles per hour and turned his automobile across the centerline of said highway to the south and into the eastbound lane and was thereby negligent." (Emphasis supplied.) Thus, plaintiff's Instruction No. 2 hypothesized for the jury on the basis of what defendant did as he drove across the railroad tracks, not on the basis of what he might have done east of the tracks based on discoverable peril. Instruction No. 15 was in response to this submission in Instruction No. 2, and its applicability was specifically so limited in the last part of the instruction. It hypothesized for the jury whether defendant Reum was confronted with an emergency at the time he was charged under Instruction No. 2 with the commission of negligent acts for which he should be held liable. An emergency instruction need hypothesize conduct of defendant prior to his coming into the position where the hypothesized emergency arose only in order that it may be found

that the emergency was not caused by his own tortious conduct. Jones v. Hughey, Mo., 283 S.W.2d 550, 553. Instruction No. 15 did this when it required the jury to find that defendant Reum "was at all times referred to in the evidence exercising the highest degree of care in the operation of said automobile." Plaintiff complains that this hypothesized generally rather than hypothesizing facts, but this court has held that freedom of defendant from any negligence in bringing about an emergency may be hypothesized generally. Jones v. Hughey, supra. A rather similar instruction was specifically approved by this court in the Jones case. Instruction No. 15 actually goes further than the instruction in the Jones case in that it requires the jury to find "that no act of defendant Reum contributed to cause said emergency." These hypothesizations were sufficient to require a finding by the jury that the defendant Reum did not cause or contribute to cause the emergency. This would include the element of discoverability.

Plaintiff also claims that Instruction No. 15 was erroneous because it used the phrase "no act" rather than "no negligence". In substance, he says that "act" refers to an affirmative thing and hence is different from "negligence" which includes both act and omission. As was stated in Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541, 545, " 'The test of the correctness of an instruction is how the instruction will naturally be understood by the average men who compose our juries on whose judgment of the facts the court must act. * * *' " In describing the sudden emergency doctrine, this court said in Rohde v. St. Louis Public Service Co., Mo., 249 S.W.2d 417, 420, "* * * An integral part of the doctrine, in the sense that it is prerequisite to its application, is that the emergency shall not have been caused or contributed to by the tortious *conduct* of the one asserting the emergency * * *." (Emphasis supplied.) We believe a jury would consider that the word "act" as used would be syn-

onymous with "conduct" or "negligence" and would include such things as failure to keep a lookout. To hold the instruction bad for use of the word "act" instead of the word "conduct" or the word "negligence" would be unduly technical. If the plaintiff thought the word required further definition, he could have tendered an instruction thereon.

■ Finally, plaintiff seems to complain that Instruction No. 15 hypothesized that the highway was blocked by the Kitchin automobile *and the Bennett automobile,* whereas Reum had testified to seeing only the Kitchin car at the time he swerved. This, says plaintiff, hypothesized facts not supported by the evidence. Presumably, plaintiff would contend that the instruction should have left out any reference to the plaintiff's Buick automobile. The facts were that the highway was blocked by both automobiles which were more or less side by side in the middle of the highway. We cannot see where any prejudice would have resulted to plaintiff by the fact that the instruction hypothesized the presence of both automobiles rather than the one, and plaintiff's brief does not undertake to demonstrate any error. In this connection, plaintiff also complains that later in the instruction defendant Reum hypothesized his turn to the left and application of his brakes in order to avoid striking the aforesaid mentioned automobiles and *plaintiff.* It is true that Reum testified that he did not see plaintiff until he had swerved to the left, but he testified that after he saw plaintiff he attempted to turn further to the left and applied his brakes in an emergency fashion in an attempt to avoid hitting plaintiff, but his car would not respond enough to avoid the collision. We think there was ample evidence to justify the instruction. Plaintiff seems to contend that the instruction was confusing in that he says it appears to say that Reum entered the south lane where he struck plaintiff "in order to avoid striking * * * plaintiff." We do not believe that the jury would have so read it or would have been confused or misled.

We hold that Instruction No. 15 was a proper instruction.

Plaintiff also complains of Instruction No. 16, a converse humanitarian instruction, on the basis that it omitted the issue of discoverable peril. In order to consider this question, it is necessary to set out verbatim not only Instruction 16 but also Instruction No. 3 which it undertook to converse. They are as follows.

## INSTRUCTION NO. 3

"The Court instructs the jury that if you find and believe from the evidence that on April 5, 1963, on Highway 150 at the time and place mentioned in evidence, plaintiff, while standing on the south side of the center line of said highway at the driver's door of the Plymouth automobile mentioned in evidence, became and was in a position of imminent peril of being struck and injured by the Chevrolet automobile being operated by defendant, James E. Reum, and that defendant, James E. Reum, saw or by the exercise of the highest degree of care could have seen plaintiff in such position of imminent peril, in time thereafter, with the means and appliances at hand and with reasonable safety to himself and others, to have sounded his horn as a warning to plaintiff of the dangerous proximity of said Chevrolet automobile and could thereby have prevented the collision of said Chevrolet with the person of plaintiff, as mentioned and described in evidence, and that defendant Reum failed to so warn plaintiff and that in so failing under the aforesaid circumstances he failed to exercise the highest degree of care and was thereby negligent, and that said negligence directly caused said Chevrolet to strike and injure plaintiff or that said negligence directly combined and concurred in part with the conduct of others to cause said Chevrolet to strike and injure plaintiff, then your verdict shall be for the plaintiff, Alvie L. Bennett, and against defendant, James E. Reum."

## INSTRUCTION NO. 16

"The Court instructs the jury that if you find and believe from the evidence that at the time plaintiff entered a position of imminent peril as submitted to you in Instruction No. 3, defendant Reum could not have, by the exercise of the highest degree of care, in the time and distance he then had, sounded his horn as a warning to plaintiff and thereby have prevented the collision of said Chevrolet with the person of plaintiff, then you cannot return a verdict for plaintiff under Instruction No. 3 and your verdict must be for Defendant Reum unless you find for plaintiff under Instruction No. 2."

Plaintiff asserts that Instruction No. 3 submitted the issue of discoverable peril, but that Instruction No. 16 omitted it. We do not agree. Instruction No. 16, in substance, says to the jury: If you find that "at the time plaintiff entered a position of imminent peril *as submitted to you in Instruction No. 3.*" (Emphasis supplied.) The instruction does not attempt to tell the jury when that was. It uses as a standard the instruction drafted and submitted by plaintiff which was No. 3. That was the time to be used by the jury in the hypothesization submitted. The instruction tells the jury to determine as of that time whether Reum could have avoided the collision by sounding his horn. That did not ignore or eliminate the issue of discoverability. See instruction approved in Welch v. McNeely, Mo., 269 S.W.2d 871, 875. Plaintiff also complains of the insertion of the phrase "in the time and distance he then had". A reading of the instruction discloses that this did not change the time from which the jury was to judge Reum's conduct. The instruction's meaning would be unchanged if that phrase were eliminated. Its inclusion did not constitute reversible error.

The judgment as entered by the trial court is affirmed.

All of the Judges concur.